Argued and submitted January 13, affirmed July 30, 2003

In the Matter of
Elwin Aragorn, Brendan Aragorn,
and Faelan Aragorn, Minor Children.

STATE ex rel JUVENILE DEPARTMENT
OF MULTNOMAH COUNTY,
*Respondent,*

*v.*

Jonathan ARAGORN
and Patricia Aragorn,
*Appellants.*

9902-802911, 9902-802912, 9902-802913;
A110377 (Control)

STATE OF OREGON,
*Respondent,*

*v.*

JONATHAN ARAGORN,
*Appellant.*

9904-32929; A111092

STATE OF OREGON,
*Respondent,*

*v.*

SARAH ARAGORN,
aka Patricia Aragorn,
*Appellant.*

9904-32930; A111109
(Cases Consolidated)

73 P3d 939

Michael E. Rose argued the cause and filed the briefs for appellant Jonathan Aragorn.

Laurie Bender argued the cause and filed the brief for appellant Sarah Aragorn aka Patricia Aragorn.

Kaye E. McDonald, Assistant Attorney General, argued the cause for respondents. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

BREWER, J.

## BREWER, J.

Defendants Jonathan and Sarah Aragorn[1] were charged with multiple offenses stemming from their unsuccessful efforts to obtain sexual partners for two of their minor sons, B, age 11, and C, age 8. The proposed sexual partners were three minor girls, all under the age of 14. Two of the three girls, "Holly" and "Christine," were the fictional daughters of undercover agent Adrienne Sparrow, with whom defendants met on several occasions to discuss the possibility of sexual relationships between their children. The only "real" girl was defendants' 12-year-old neighbor, who was a friend of B. Defendants were convicted and now appeal, raising various assignments of error. We affirm.[2]

The relevant charged offenses are inchoate crimes relating to sexual abuse in the first degree. ORS 163.427.[3] Five counts of attempted sexual abuse in the first degree were alleged only against defendant Jonathan Aragorn. The allegations in each count were the same except for the names and ages of the children. As exemplary, one of those counts alleged:

> "The said defendant, Jonathan Aragorn, on or between January 1, 1998 and February 11, 1999, in the County of Multnomah, State of Oregon, did unlawfully and knowingly attempt to subject [B], a person under the age of fourteen years, to sexual contact by attempting to aid and abet [B] in touching a sexual or intimate part of a child known to the defendant as HOLLY, a child purported to be 11 years of age, contrary to the Statutes in such cases made and provided and against the peace and dignity of the State of Oregon[.]"

---

[1] Throughout this opinion, when we refer to Jonathan and Sarah Aragorn together, we refer to them as "defendants."

[2] Defendants' criminal cases were consolidated for purposes of both trial and appeal with the juvenile proceeding establishing dependency jurisdiction over B, C, and their oldest child, A. We affirm the judgment establishing dependency jurisdiction without discussion.

[3] ORS 163.427 provides, in part:

"(1) A person commits the crime of sexual abuse in the first degree when that person:

"(a) Subjects another person to sexual contact and:

"(A) The victim is less than 14 years of age[.]"

Four counts of solicitation to commit sexual abuse in the first degree were alleged against both defendants. Again, the allegations in each count were the same, except for the names and ages of the individual children:

"The said defendants, on or between January 1, 1998 and February 11, 1999, in the County of Multnomah, State of Oregon, did unlawfully solicit Special Agent Adrienne Sparrow, a person known to defendants as Adrian Lynch, to engage in specific conduct, to-wit: to aid and abet [B], a person under the age of 14 years, in engaging in sexual contact by having [B] touch a sexual or intimate part of a child known to defendants as Holly, a child purported to be 11 years of age, which conduct constituted the crime of Sexual Abuse in the First Degree, punishable as a felony, with the intent of causing the said Special Agent Adrienne Sparrow, a person known to defendants as Adrian Lynch, to engage in said conduct by providing the said child known to the defendants as Holly for the purpose of sexual contact, contrary to the Statutes in such cases made and provided and against the peace and dignity of the State of Oregon."

Finally, five counts in each indictment alleged that defendants had committed conspiracy to commit sexual abuse in the first degree:

"The said defendants, on or between January 1, 1998 and February 11, 1999, in the County of Multnomah, State of Oregon, did unlawfully, with the intent that conduct constituting the crime of Sexual Abuse in the First Degree punishable as a felony be performed, agree with each other to cause the performance of the following conduct, to-wit: to unlawfully and knowingly cause [B], a person under the age of 14 years, to engage in sexual contact by having [B] touch a sexual or intimate part of a child known to the defendants as HOLLY, a child purported to be 11 years of age, contrary to the Statutes in such cases made and provided and against the peace and dignity of the State of Oregon."

Defendants demurred to the indictments, arguing, in part, that, under ORS 163.345,[4] sexual contact between

---

[4] ORS 163.345(1) provides:

"In any prosecution under * * * ORS 163.427 [or other enumerated sexual offense] in which the victim's lack of consent was due solely to incapacity to consent by reason of being less than a specified age, it is a defense that the

children within three years of age of each other is not a crime. The trial court denied defendants' demurrers:

> "I'm satisfied after reading the case law that *State* [*v.*] *Harvey*[, 303 Or 351, 736 P2d 191 (1987),] is, in fact, controlling, and although at least on the Sexual Abuse in the First Degree counts, that [one or another of the children] might have a defense based upon the age, that that defense is not available to the parents. And that a crime has, in fact, been stated in the Indictment."

At the close of the state's case in chief, defendants moved for judgments of acquittal, again in part on the ground that ORS 163.345 provided a defense to the charges; as relevant here, the trial court denied those motions as well. At the close of the evidence, the trial court instructed the jury as to each attempt count using wording parallel to that used in the indictment; for example, as to one of the attempt counts, the court instructed the jury that "the State must prove * * * that Jonathan Aragorn knowingly attempted to subject [B] to sexual contact by * * * attempting to aid and abet [B] in touching a sexual or intimate part of a child known to the defendant as Holly." As exemplary of the solicitation counts, the trial court instructed the jury that it must find that defendants solicited Sparrow to commit the crime of sexual abuse in the first degree and that the material elements of the latter crime were "[t]o knowingly aid and abet [B], a person less than 14 years of age, in engaging in sexual contact by providing a child known to [defendants] as Holly for the purpose of sexual contact with [B]." The trial court also separately instructed the jury on the meaning of aiding and abetting:

> "A person *attempts to aid and abet another person in* the commission of a crime if the person with the intent to promote or make easier the commission of the crime attempts to encourage, procure, advise or assist by act or advice the planning or commission of the crime."

The trial court declined to give defendants' requested jury instruction on the age defense provided in ORS 163.345. As

---

actor was less than three years older than the victim at the time of the alleged offense."

It is undisputed that, as alleged in each count of the indictment, the children were within three years of each other in age.

noted, defendants were convicted on all of the described counts.

In their first, second, and third assignments of error on appeal, defendants contend that the trial court erred in denying their demurrers to the indictments, in denying their motions for judgments of acquittal, and in failing to give their requested jury instruction. Each of those assignments is based on ORS 163.345, which provides, as noted, that, in any prosecution under ORS 163.427 or other enumerated sexual offense, "it is a defense that the actor was less than three years older than the victim at the time of the alleged offense." Defendants contend that they were charged and tried on an accomplice theory of liability in which it was alleged that they attempted to, or solicited Sparrow to, aid and abet the boys in sexually abusing the girls, that the defense was available to the boys, that it therefore was available to them, and that, accordingly, as a matter of law, the trial court erred in the described respects.

The state responds that the defense provided in ORS 163.345 is not available to defendants because they were not tried on an accomplice theory. According to the state, defendants were tried as the principal actors of the specified inchoate crimes committed against the children, including the boys, the latter of whom were the victims of the crimes. The state contends that, to the extent that the indictment alleged that defendants aided and abetted the boys, that allegation merely described the means by which they committed their crimes and, as a legal matter, constituted mere surplusage as to the elements of the crimes actually charged.[5] In the latter regard, the state argues that, because the availability of the defense provided in ORS 163.345 is a question of law

---

[5] Specifically, the state argues in part that defendants

"misunderstand the nature of the charges against them. Contrary to [defendants'] argument, they were not charged with attempting, soliciting, or conspiring with their minor children to commit sexual abuse in the first degree. Rather, the underlying conduct at issue consists of defendants' various efforts to subject their own young children to sexual contact. Thus understood, defendants' characterization of their children as the 'principals' and of themselves as mere 'aiders and abettors' miscasts the issue. *Defendants are the principal actors in the charged crimes. Their children were their intended victims.*"

(Emphasis added.)

and therefore did not affect defendants' presentation of evidence, and because, in any event, the state's case focused in part on defendants as principals, defendants were not prejudiced by the inclusion of the "aid and abet" language. Finally, relying on principles of statutory construction and on *Harvey*, the state argues that, even assuming that defendants were charged and tried on an aiding and abetting theory, the defense provided in ORS 163.345 is not available to adult defendants, even those who are criminally liable for the criminal acts of others to whom the defense is available.

Defendants reply that the aid and abet language in the indictments was not surplusage and that, even if the age defense was not available to them as a matter of law, the inclusion of that language deprived them of their right to adequate notice of the charges against them and other protections implicated in the proper pleading of crimes.

■ We review the trial court's ruling on defendants' demurrers to the indictments for errors of law. *State v. Huckins*, 176 Or App 276, 281, 31 P3d 485 (2001). In determining whether the trial court erred in denying defendants' motions for judgments of acquittal, we view the evidence in the light most favorable to the state to determine whether, in light of defendants' asserted defense, any rational trier of fact could have found the essential elements of the offenses beyond a reasonable doubt. *State v. King*, 307 Or 332, 339, 768 P2d 391 (1989); *State v. Hamilton*, 186 Or App 729, 731, 64 P3d 1215 (2003); *see also State v. Herrera*, 286 Or 349, 360, 594 P2d 823 (1979) (applying standard in context of submission of defense to jury in criminal case). We review the trial court's refusal to give defendants' requested jury instruction for errors of law. *State v. Moore*, 324 Or 396, 428-29, 927 P2d 1073 (1996).[6]

---

[6] As we recently explained in *State v. Ramsey*, 184 Or App 468, 473, 56 P3d 484 (2002), *rev den*, 335 Or 479 (2003),

"a defendant who 'asserts a defense to a charge * * * is entitled to have his [or her] theory of the case presented to the jury if there is *any evidence* from which the jurors could infer that the required elements of the defense are present.' *State v. Shelley*, 110 Or App 225, 228, 821 P2d 1111 (1991) (emphasis added). Under the 'any evidence' standard, a court should not attempt to weigh conflicting evidence; rather, it may decline to give a requested jury instruction only if the record contains no evidence on an essential element of the defense. *State v. Brown*, 306 Or 599, 602, 761 P2d 1300 (1988)."

As an initial matter, we decline to address the state's contention that the aiding and abetting allegations included in the attempt and solicitation counts of the indictments were surplusage. In the abstract, those counts arguably stated crimes even without the aiding and abetting allegations. *Cf. State v. Coven*, 115 Or App 538, 541, 839 P2d 261 (1992) (Warren, P. J., specially concurring) (in determining whether an allegation in an indictment is surplusage, " '[a]ll unnecessary words may * * * be rejected as surplusage if the indictment would be good were they omitted' " (quoting *Frisbie v. State*, 1 Or 248, 249 (1859)).[7] However, the record in this case demonstrates that the aiding and abetting allegations constituted integral components of the state's pleading and proof as to those charges. Notably, the trial court gave a jury instruction on aiding and abetting, and the state did not object to that instruction. We decline at this late stage to regard the state's case as embodying a different theory of the crimes. It follows that we also need not consider whether defendants were prejudiced in that manner by the inclusion in the indictments of the purported "surplusage."[8]

---

As noted above, the state does not dispute that the children in this case were within three years of age of each other.

[7] Specifically, as to the attempt charges against Jonathan Aragorn, omission of the aid and abet language would nevertheless leave an allegation that he "did unlawfully and knowingly attempt to subject [B], a person under the age of fourteen years, to sexual contact." That allegation adequately states the crime of attempted sexual abuse in the first degree, identifying Jonathan Aragorn as the actor and B as the victim. *See* ORS 163.305(6) (defining "sexual contact" in part as "any touching of the sexual or other intimate parts of a person"). Similarly, as to the solicitation counts, omission of the aid and abet language—albeit with the retention and repositioning of the allegation that B is under 14 years of age—would leave, as pertinent here, an allegation that defendants

"did unlawfully solicit [Sparrow], a person known to defendants as Adrian Lynch, to engage in specific conduct, to-wit: by having [B], a person under 14 years of age, touch a sexual or intimate part of a child known to defendants as Holly, a child purported to be 11 years of age, which conduct constituted the crime of Sexual Abuse in the First Degree, by providing the said child known to the defendants as Holly for the purpose of sexual contact."

That allegation adequately states the crime of solicitation of sexual abuse in the first degree, again identifying B as the victim. Thus, the indictments arguably can be viewed as stating either (1) the crimes of (a) aiding and abetting the boys in attempting to sexually abuse Holly and (b) soliciting Sparrow to aid and abet the boys in doing so; or (2) the crimes of (a) attempting to sexually abuse the boys and (b) soliciting Sparrow to sexually abuse the boys.

[8] Defendants do not assert that the indictments failed to state crimes because they did not allege attempted or solicited physical contact between themselves and

■ We turn to the issue as framed by defendants on appeal: whether the trial court erred as to the applicability to them of the age defense in ORS 163.345. We begin our analysis by considering the text of the statute. *PGE v. Bureau of Labor and Industries,* 317 Or 606, 610, 859 P2d 1143 (1993). The availability of the defense provided by ORS 163.345 depends on the age of the "actor" at the time of the alleged offense. The term "actor" has no statutory definition. As pertinent here, the commonly understood meaning of the term is "wrongdoer." *Webster's Third New Int'l Dictionary* 22 (unabridged ed 1993). This court previously has noted, without further analysis, that the defense provided by ORS 163.345 is available to the "offender" or the "defendant," *i.e.,* the person charged, who satisfies the age difference. *See, e.g., State v. Thorp,* 166 Or App 564, 575, 2 P3d 903 (2000), *rev dismissed,* 332 Or 559 (2001) (ORS 163.345 was enacted to provide a defense for "offenders" less than three years older than the victim); *State v. Jalo,* 72 Or App 479, 482 n 1, 696 P2d 14, *rev den,* 299 Or 443 (1985) (ORS 163.345 provides a defense that "the defendant" was less than three years older than the victim at the time of the alleged offense).

Other provisions of the criminal code use the term "actor" to similar effect. ORS 161.460(1) provides a defense of renunciation to the crime of conspiracy when the "actor, after conspiring to commit a crime, thwarted commission of the crime which was the object of the conspiracy, under circumstances manifesting a complete and voluntary renunciation of the criminal purpose of the actor." In the attempt context, ORS 161.425 provides that "it is no defense that it was impossible to commit the crime which was the object of the attempt

---

the boys. Under ORS 163.427, the sexual contact need not be between the person charged and the victim. The statute requires only that the defendant "subject" another to sexual contact. Thus, the offense of sexual abuse in the first degree encompasses causing the victim to have sexual contact with a third person. *See* Criminal Law Revision Commission, Proposed Criminal Procedure Code, Final Draft and Report (July 1970), Commentary to §§ 115, 116, pp 122-24 ("The contact need only be with either the victim or the actor but it need not be between them. Subjecting another to sexual contact with an animal or another person is also covered.").

Defendants also do not argue that the indictments were deficient because, as a matter of law, they could not aid and abet the victims—the boys—in committing crimes against themselves. *See* ORS 161.155 (setting out circumstances in which a person is criminally liable for the conduct of another person "constituting a crime").

where the conduct engaged in by the actor would be a crime if the circumstances were as the actor believed them to be." In both of those contexts, the actor is the person whose conduct constitutes commission of the inchoate crime and who therefore is the person liable to be charged with the offense. That is consistent with our understanding of the term "actor" as used in ORS 163.345.

Defendants nevertheless correctly observe that it is possible for a person to be prosecuted for the conduct of another. ORS 161.155 provides:

"A person is criminally liable for *the conduct of another person constituting a crime* if:

"(1)  The person is made criminally liable by the statute defining the crime; or

"(2)  With the intent to promote or facilitate the commission of the crime the person:

"(a)  Solicits or commands such other person to commit the crime; or

"(b)  Aids or abets or agrees or attempts to aid or abet such other person in planning or committing the crime; or

"(c)  Having a legal duty to prevent the commission of the crime, fails to make an effort the person is legally required to make."

(Emphasis added.) Under ORS 161.155(2)(b), a person who aids or abets or attempts to aid or abet another person in the commission of a crime with the intent to promote or facilitate the commission of the crime is criminally liable for the conduct of the other person. In such a case, the person charged might be different from the person who carries out the criminal conduct. That circumstance raises the question whether a person who is charged as an accomplice to the commission of a crime is entitled to rely on a defense to criminal liability that is available to the person who committed the conduct constituting the crime.[9]

---

[9] Again, defendants have not challenged the apparent premise of the attempt and solicitation charges that a defendant may aid and abet a victim in the commission of a crime against the victim, and we express no opinion on that matter.

The Supreme Court addressed that question in *Harvey*. In that case, the defendant was charged with first-degree rape on an accomplice theory under ORS 161.155 for having solicited his 14-year-old son to have sexual intercourse with his 11-year-old stepdaughter. ORS 161.155(2)(a). The defendant argued that he could not be found guilty as an accomplice to rape because, under the then-extant provisions for remand of juveniles to adult court for criminal prosecution, his son, the person who performed the underlying sexual act, could not be prosecuted for or found guilty of rape. *Harvey*, 303 Or at 354. The court rejected that argument:

> "It is no defense for the adult defendant that his juvenile son could not be criminally tried for first degree rape although an adult could be. *See [former]* ORS 419.533 [(restricting remand from juvenile court to adult court to persons aged 15 or older)]. Similarly, if the actor's conduct otherwise qualifies as a crime, the fact that he has a personal defense of acting under duress by another person hardly can be a defense to that other person's responsibility under ORS 161.155 for commanding and compelling commission of the crime."

*Id.* (footnote omitted). The court referred to the 14-year-old son as the "actor." In defendants' view, that reference is consistent with their position that, in this case, the children were the actors and that the conduct of the children should be the focus of the inquiry as to the availability of the defense under ORS 163.345.

That is not our understanding of *Harvey*. To the contrary, we understand it to say that the availability of a personal defense to one person who has engaged in criminal conduct does not itself insulate from criminal liability other persons to whom the defense, by its operative terms, does not apply. Thus, in *Harvey*, the fact that the defendant's son may have acted under duress was of no assistance to the defendant, not because the defendant applied the duress but for the more fundamental reason that the defendant himself did not act under duress. Moreover, we understand the principle recognized in *Harvey* to apply, not only in the context of accomplice liability, but also in the context of liability for inchoate crimes such as attempt, solicitation, and conspiracy. That is because liability for any type of crime attaches upon

the commission of criminal conduct and, in the case of inchoate crimes, the inchoate conduct is itself made criminal by the applicable statutes.

Thus, even assuming that some persons are, in effect, primary actors in the commission of an offense and others are criminally liable only as accomplices or by reason of conduct constituting an inchoate crime, each is entitled to assert only the defenses to liability that attach to that person's own circumstances or relation to the crime. In short, *Harvey* does not support defendants' position that ORS 163.345 is available to persons in their position—whether charged as accomplices or with inchoate crimes—solely by reason of the fact that a different person contemplated as having committed the underlying conduct would be entitled to assert that defense.[10]

Applying the described understanding of ORS 163.345 here, we conclude that the defense provided in that statute was not available to defendants. It necessarily follows that the trial court did not err in denying defendants' demurrer, in denying their motions for judgment of acquittal, or in refusing to give their requested jury instruction based on the defense.

Defendants assert several other assignments of error pertaining to their criminal convictions that we reject without discussion.

Affirmed.

---

[10] The *Harvey* court did not discuss ORS 163.345. In light of the court's ultimate conclusion, however, it seems unlikely that, had the court noted the use of the term "actor" in ORS 163.345, it would have used that same term in the quoted portion of its analysis to refer to the person performing the underlying act. For that reason as well, we view *Harvey* as being of no assistance to defendants in their quest to attach anything other than its usual meaning to the term "actor" as used in ORS 163.345.