Argued and submitted June 28, on appeal, reversed and remanded for
reinstatement of the judgment entered on jury verdict; affirmed on cross-appeal
September 22, 2004

## STATE OF OREGON,
*Appellant - Cross-Respondent,*

*v.*

## JEREMY LEONARD WOODMAN,
*Respondent - Cross-Appellant.*

01061305; A120532

97 P3d 1263

David J. Amesbury, Assistant Attorney General, argued the cause for appellant - cross-respondent. With him on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Robin A. Jones, Senior Deputy Public Defender, argued the cause for respondent - cross-appellant. With him on the brief were Peter Ozanne, Executive Director, and Peter Gartlan, Chief Defender.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

SCHUMAN, J.

## SCHUMAN, J.

 The trial court, having entered a judgment convicting defendant of murder, subsequently granted his motion for a new trial. The state appeals, assigning error to the court's conclusion, based on juror affidavits and testimony, that the trial was tainted by irregularity, ORCP 64 B(1), and that the verdict was "against law," ORCP 64 B(5). Defendant conditionally cross-appeals, assigning error to the trial court's refusal to give a requested special jury instruction. We review the grant of a new trial for abuse of discretion. *Leland Properties v. Burton Engineering and Survey*, 152 Or App 557, 564, 954 P2d 851, *rev den*, 327 Or 620 (1998). However, to the extent that the grant is based on the interpretation of law, we review for legal error. *Bennett v. Farmers Ins. Co.*, 332 Or 138, 151, 26 P3d 785 (2001). Under those standards, on the state's appeal, we vacate the trial court's order and remand with instructions to reinstate the judgment on the verdict; on defendant's cross-appeal, we affirm.

The following abbreviated rendition of facts derives from trial testimony and, insofar as it is relevant to the legal issues, is undisputed. When defendant was a minor, he was befriended by an adult named Hauck, who apparently provided him with relief from a physically and emotionally abusive home. Eventually, he also exploited defendant sexually. Several years later, defendant, by then an adult, stayed briefly with Hauck while attempting to overcome a methamphetamine addiction. During his stay, defendant discovered a videotape of himself as a child and Hauck engaging in sexual acts. He also found tapes of Hauck having sex with other underage males. Defendant threatened to expose Hauck as a child molester unless Hauck "loaned" him a large sum of money. Hauck refused and threatened to kill defendant if such exposure occurred.

A short time later, Hauck contacted defendant and told him to retrieve his belongings from Hauck's house or Hauck would throw them away. Afraid to go to there alone, defendant asked Yancey, his friend (and eventual codefendant), to accompany him. Yancey agreed. When they arrived at Hauck's home, defendant asked Yancey to wait in the garage while he went inside to collect his things. Some time

later, defendant came into the garage and told Yancey that he was going to lie down with Hauck and that Yancey could wait in the living room. After waiting there for an hour, Yancey heard Hauck and defendant arguing, and then he heard a loud thud and a bang. Then he heard defendant scream for help.

Knowing that Hauck was a very large man—he stood six feet, five inches tall and weighed around 350 pounds—Yancey ran to the garage and grabbed a crowbar he had seen while he was waiting there. When he reached the bedroom where Hauck and defendant were, he saw Hauck standing a few feet away from defendant, who was on the floor and appeared to be "roughed up." Hauck, surprised by Yancey's arrival, rushed Yancey, and a fight ensued. While Yancey and Hauck struggled with the crowbar, defendant first watched, in a daze; then he left the bedroom and returned with a knife, which he slid across the floor to Yancey. Yancey and Hauck struggled for the knife. During the course of that struggle, Hauck was stabbed in the back and neck. He fell to the floor and did not move again. Defendant left the room and returned with a metal pipe. He hit Hauck in the head several times with the pipe before becoming hysterical. Hauck died from wounds to his head, neck, and chest.

After a cursory attempt to clean themselves of blood, the two men took Hauck's vehicle and drove to Washington state, where defendant was soon apprehended. Under questioning there, he claimed to have killed Hauck by himself; that claim, however, was contradicted by the physical evidence. Ultimately Yancey was apprehended, and both men were charged with aggravated murder.

At trial, Yancey chose to testify on his own behalf. Defendant did not take the stand. During deliberations, the jury submitted several notes to the court. The first was a request for clarification of the term "intent." The jury asked, "Did this person need to have the intent to murder when they went to [victim's home]?" and "Does the intent to murder have to be a conscious thought during the fight?" The note also asked for a clarification of "intent versus premeditation." The court responded that it could not further define "intent or

intentionally" and that the jury would have to rely on a careful reading of the instructions.

The second note submitted by the jury asked, "If Yancey's found not guilty can we still look at aid and abet for [defendant]?" The court responded that they could not. In the last note relevant to this appeal, the jury asked, "If we find Yancey not guilty, can we find [defendant] guilty of murder?" The term "intent" has been scratched out before the term "murder." The court answered that they could.

The jury returned general verdicts acquitting Yancey and convicting defendant of the lesser-included offense of intentional murder. A judgment against defendant was entered accordingly. Shortly thereafter, however, two jurors contacted defendant's attorney and apparently described to him some aspects of the jury deliberations that they found disturbing. Defendant's attorney prepared affidavits reciting their concerns; the jurors signed them. Defendant's attorney then filed a timely motion for a new trial under ORCP 64 B.[1]

During the hearing on the motion, the trial court received into evidence, and eventually considered, the affidavits as well as the testimony of the two jurors. Both jurors asserted that, "[d]uring deliberations, 10 of the 12 jurors * * * believed Co-Defendant Charles Yancey's testimony that he personally killed John Hauck in self-defense." Juror Graves further claimed that the jury was unaware that, under Oregon law, a jury could not convict defendant of aiding and abetting a crime when the act that was aided and

---

[1] In relevant part, ORCP 64 (made applicable to criminal cases by ORS 136.535) provides:

"B Jury trial; grounds for new trial. A former judgment may be set aside and a new trial granted in an action where there has been a trial by jury on the motion of the party aggrieved for any of the following causes materially affecting the substantial rights of such party:

"B(1) Irregularity in the proceedings of the court, jury or adverse party, or any order of the court, or abuse of discretion, by which such party was prevented from having fair trial.

"B(2) Misconduct of the jury or prevailing party.

"* * * * *

"B(5) Insufficiency of the evidence to justify the verdict or other decision, or that it is against law."

abetted (Yancey's killing of Hauck) was not a crime but an act of self-defense. Graves's affidavit stated,

> "If the jury was aware of [the law], they were confused about it when they voted to convict [defendant] as an accomplice to Yancey. If I had understood the law concerning aiding and abetting, I would have found [defendant] not guilty."

Juror Marker's affidavit was similar in content. She claimed that, although she did not believe that defendant personally killed Hauck, she voted to convict him of murder because he had allegedly made statements about wanting Hauck dead, and those statements showed his intent. Both jurors stated that, if they had understood the law concerning aiding and abetting, they would have found defendant not guilty, and they believed that the other jurors would have found likewise.

After considering the affidavits and testimony, the trial court issued an order stating,

> "Pursuant to ORCP 64 B(1) there was an irregularity in the proceedings of the jury by which Defendant was prevented from having a fair trial; and * * * [p]ursuant to ORCP 64 B(5) the verdict was against law."

This appeal by the state followed. Defendant cross-appeals, arguing that the trial court erred by refusing to give a requested jury instruction on the definition of intent.

■ In its appeal, the state argues that the trial court erred in granting defendant's motion for a new trial because in doing so the court relied on allegations in juror affidavits and testimony that were beyond its discretion to consider. We agree.

The court granted defendant's ORCP 64 B motion on two bases: "Irregularity in the proceedings," ORCP 64 B(1) and "verdict * * * against law," ORCP 64 B(5). We treat each of these bases in turn.

The particular "irregularity" on which the trial court based its decision was juror confusion. The court explained:

> "As the Trial Judge I should have realized that there was confusion, and should have further instructed them

[about] aiding and abetting. I'm convinced that this was an irregularity either as to the Court or as to the jury. Clearly, based on the testimony of the two witnesses here * * * I think this does affect a substantial right of the defendant."

Regardless of the role that juror affidavits and testimony played in the trial court's decision, that decision was error. A long and unbroken line of cases establishes that juror confusion, whether labeled "misconduct" or "irregularity," does not justify impeaching a verdict. *Whisnant v. Holland*, 206 Or 392, 396, 292 P2d 1087 (1956); *Oregon Cas. R.R. Co. v. Ore. S. Nav. Co.*, 3 Or 178, 180 (Mult Co Cir Ct 1869); *Leland Properties,* 152 Or App at 563; *State v. Jones,* 126 Or App 224, 228, 868 P2d 18, *rev den,* 318 Or 583 (1994); *D.C. Thompson and Co. v. Hauge,* 72 Or App 116, 122, 695 P2d 574 (1985), *aff'd,* 300 Or 651 (1986); *Davis v. Pacific Diesel,* 41 Or App 597, 600, 598 P2d 1228 (1979), *rev den,* 288 Or 253 (1980). The trial court's ruling based on ORCP 64 B(1) was error.

■ The trial court explained its ORCP 64 B(5) "against law" ruling as follows:

"I do think, again, *State v. Fredrickson,* [92 Or App 223, 757 P2d 1366 (1988),] clearly says that you can't aid and abet unless there's a crime that had been committed, and in this particular case this same jury, irrespective of the order of deliberation, this same jury found that Mr. Yancey acted in self-defense, and as a practical matter finding [defendant] guilty of aiding and abetting is contrary to law[.]"

In other words, the court concluded that, under *Fredrickson,* defendant could not be convicted of murder on the ground that he aided and abetted Yancey in the commission of a crime when Yancey did not commit a crime: he was acquitted on the basis of self-defense. That may or may not be a correct statement of the law.[2] Whether it is, however, is irrelevant.

---

[2] *Compare Fredrickson,* 92 Or App at 227 ("By its own terms, the aiding or abetting statute applies only when there is 'conduct of another person constituting a crime.' There was no such conduct here; therefore, defendant could not aid or abet.") *with State v. Harvey,* 303 Or 351, 354, 736 P2d 191 (1987) ("[I]f the actor's conduct otherwise qualifies as a crime, the fact that he has a personal defense of acting under duress by another person hardly can be a defense to that other person's [criminal] responsibility * * *."). *See also State ex rel Juv. Dept. v. Aragorn,* 189 Or App 65, 75-76, 73 P3d 939, *rev den,* 336 Or 192 (2003) (actor's defense does not insulate other persons to whom defense does not apply).

The trial court reached its conclusion—that the jurors acquitted Yancey on the basis of self-defense and convicted defendant on an aid and abet theory—entirely on the basis of juror affidavits. The court stated:

> "And like I say, for this verdict all by itself without the input from the jurors, yes, I think there is [sufficient evidence to support the verdict]. With their input then I guess no, there isn't. There is some evidence, but not enough."

The court, then, concluded that evidence in the record could support a perfectly lawful verdict based on the jury finding that defendant was guilty of direct murder, not aiding and abetting; the jury could reasonably have found that defendant and not Yancey inflicted the fatal blows on Hauck. That characterization of the record is correct. Defendant at one point claimed sole responsibility, and, more importantly, the evidence as to what actually caused Hauck's death, the stab wounds inflicted by Yancey or the metal pipe blows inflicted by defendant, was inconclusive. However, based entirely on the information gleaned from the juror affidavits and testimony, the trial court was persuaded that the jury reached an *unlawful* verdict based on a finding that defendant aided and abetted Yancey. The state argues that the trial court exceeded its discretion in considering evidence of the jurors' thought process as revealed in juror affidavits and testimony. It follows, according to the state, that the court's decision to grant a new trial under ORCP 64 B(5) based on that wrongly considered evidence cannot stand. We agree.

■ We recently reviewed the law on the use of juror affidavits to impeach a verdict and concluded that "juror affidavits alleging misconduct are sufficient to warrant a mistrial only if they establish misconduct that amounts to a criminal obstruction of justice such as fraud, bribery, or forcible coercion." *Hill v. LaGrand Industrial Supply Co.*, 193 Or App 730, 736, 91 P3d 768 (2004). We explained the rationale for that rule as stemming from

> "the necessity of giving finality to litigation. If verdicts could be readily set aside there would be an open invitation to disappointed litigants and their counsel to contest the verdict. The invitation would carry in its wake the temptation to tamper with jurors and it would open the way for

pressures and fraudulent practices to induce members of the jury to repudiate their decisions."

*Id.* at 735 (quoting *State v. Gardner*, 230 Or 569, 574, 371 P2d 558 (1962) (footnotes omitted)); *accord Ertsgaard v. Beard*, 310 Or 486, 497, 800 P2d 759 (1990); *State v. Cheney*, 171 Or App 401, 415-16, 16 P3d 1164 (2000), *rev den*, 332 Or 316 (2001). Although *Hill* involved affidavits alleging misconduct and this case involves affidavits and testimony alleging irregularity and a verdict "against law," those differences are irrelevant. In *Sneath v. Phys. and Surg. Hospital*, 247 Or 593, 600, 431 P2d 835 (1967), the court held that, where juror affidavits cannot be considered, neither can juror testimony, and in *D.C. Thompson and Co. v. Hauge*, the court stated that "[t]he same restriction on admissibility of juror affidavits should apply where the alleged defect in the proceedings is irregularity rather than misconduct" because both call "into question the mental processes of the jurors in reaching" the verdict. 300 Or 651, 659-60, 717 P2d 1169 (1986) The operative principle is that, with the few named exceptions, trial courts may not reconsider jury verdicts based on juror affidavits relating to their mental processes, regardless of how the defect is labeled.

The juror affidavits and testimony in this case did not disclose anything approaching "a criminal obstruction of justice such as fraud, bribery, or forcible coercion." *Hill*, 193 Or App at 736. In considering them, therefore, the court exceeded the limits of its discretion. Because the "only bas[es] on which the trial court second guessed itself" were "beyond its discretion to consider," we must reverse the order granting a new trial. *Leland Properties*, 152 Or App at 564.

We turn to defendant's cross-appeal from the trial court's failure to give a requested jury instruction. The requested special instruction would have informed the jury:

"A person acts intentionally or with intent when a person acts with a conscious objective to cause a particular result."

The court declined that request and gave instead an instruction taken almost verbatim from the Uniform Criminal Jury Instructions on intent, UCrJI 1037:

"[A] person acts intentionally or with intent when the person acts with a conscious objective either to cause a particular result, or to engage in particular conduct."

Defendant argues that, according to the instruction given by the court, which included the phrase "or to engage in particular conduct," the jury could have found that defendant acted with culpable intent if, when he slid the knife to Yancey, he did so with the conscious objective merely to perform that act, even if he had no conscious objective that Yancey would pick up the knife and kill Hauck. The requested instruction, defendant contends, would correctly have indicated that the state needed to establish that defendant acted with a conscious objective to cause Hauck's death.

"For an instruction to constitute reversible error, it must have prejudiced the defendant when the instructions are considered as a whole." *State v. Pratt*, 316 Or 561, 576, 853 P2d 827, *cert den*, 510 US 969 (1993) (quoting *State v. Williams*, 313 Or 19, 38, 828 P2d 1006 (1992)). Defendant's argument ignores "the whole," that is, the context within which the disputed instruction occurred. The trial court told the jury:

"A person who is involved in committing a crime may be charged and convicted of that crime if, with the intent to promote or facilitate the commission of the crime, a person aids and abets someone in committing the crime. Under these circumstances it is not necessary for the [person] to actually be personally present at the time and place of the commission of the crime.

"With respect to the phrase 'with the intent to promote or facilitate the commission of a crime,' a person acts intentionally or with intent when a person acts with a conscious objective either to cause a particular result or to engage in particular conduct.

"A person aids and abets another person in the commission of a crime if the person, with the intent to promote or make easier the commission of the crime, encourages, procures, advises or assists, by act or advice, the planning and commission of a crime. And again with respect to the phrase 'with intent to promote or make easier the commission of a crime,' a person acts intentionally or with intent when the

person acts with a conscious objective either to cause a particular result or to engage in particular conduct.

"* * * * *

"To establish the lesser included crime of Murder the State must prove beyond a reasonable doubt that * * * [defendant] intentionally caused the death of [Hauck], another human being.

"As used in the phrase 'intentionally caused the death of [Hauck]' a person acts intentionally or with intent when a person acts with a conscious objective either to cause a particular result, or to engage in particular conduct.

"For Murder * * * it does not require that the defendant caused the death personally. Is everybody okay on that? Do you understand?"

Viewed in conjunction with the other instructions, the court's murder and intent instructions clearly indicate that the "particular conduct" to which the intent element applied was "caus[ing] the death" of the victim or "encourag[ing], procur[ing], advis[ing] or assist[ing], by act or advice, the planning and commission of a crime." As the state correctly argues, the court's intent instruction was, at worst,

"slightly redundant, telling the jury that it could find defendant guilty if it (a) found that he caused the victim's death with the conscious objective of causing that death or (b) found that he acted with the conscious objective of engaging in the particular conduct of causing the victim's death."

A refusal to give a requested instruction is not error if "the instruction given by the court, although not in the form requested, adequately covers the subject of the requested instruction." *State v. Tucker*, 315 Or 321, 332, 845 P2d 904 (1993). Although defendant's suggested instruction may have been correct and may even have been more succinct than the one given, the trial court nonetheless did not err in refusing to give it, because the instruction it did give correctly stated the law and covered the same topics. We therefore reject defendant's cross-appeal.

On appeal, reversed and remanded for reinstatement of the judgment entered on jury verdict; affirmed on cross-appeal.