Argued and submitted June 23, 2005, decision of Court of Appeals affirmed; judgment of circuit court reversed and case remanded to circuit court for further proceedings June 22, reconsideration denied August 15, 2006

# STATE OF OREGON,
*Respondent on Review,*

*v.*

# JEREMY LEONARD WOODMAN,
*Petitioner on Review.*

## (C01061305; CA A120532; SC S51920)

138 P3d 1

Robin A. Jones, Senior Deputy Public Defender, Salem, argued the cause and filed the brief for petitioner on review. With her on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

David J. Amesbury, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

BALMER, J.

**BALMER, J.**

This criminal case presents two issues: (1) whether the trial court erred in ordering a new trial based on juror affidavits, and (2) whether the trial court's jury instructions as to the mental state required to convict defendant of murder were erroneous.

A jury convicted defendant of murder. Defendant moved for a new trial and submitted affidavits from two jurors to demonstrate that the jurors were confused about the law when they convicted defendant. The trial court granted a new trial based on the juror affidavits. The state appealed that decision, and defendant cross-appealed, asserting that there had been an error in the trial court's jury instructions. The Court of Appeals concluded that the trial court had erred in granting a new trial and that it had not erred in its jury instructions. Accordingly, it reversed the judgment and ordered the trial court to reinstate the jury verdict. *State v. Woodman*, 195 Or App 385, 97 P3d 1263 (2004). We allowed review and, for the reasons that follow, affirm the decision of the Court of Appeals.

## FACTS

The facts relating to the murder were disputed at trial. Because the jury found defendant guilty, we state the facts in a manner consistent with that verdict, noting that the jury could have found defendant guilty based on this version of the facts or on other evidence that we discuss below, including statements by defendant. Defendant was physically and emotionally abused as a child. An adult (Hauck, the victim in this case) offered defendant respite from that abuse, but then sexually abused him. Several years later, as an adult, defendant struggled with methamphetamine addiction and returned to Hauck's home for a short time. During his stay with Hauck, defendant discovered videotapes of Hauck engaging in sexual acts with a number of young boys, including defendant as a boy. Defendant threatened to reveal the existence of the videotapes unless Hauck gave him a large sum of money, but Hauck refused and threatened to kill defendant if he exposed Hauck's sexual abuse.

After that confrontation, defendant left Hauck's home. Shortly thereafter, Hauck contacted defendant and told him to retrieve his belongings. Defendant was afraid of Hauck and asked a friend, Yancey, to accompany him. When they arrived at Hauck's home, defendant instructed Yancey to wait in Hauck's garage while he retrieved his belongings. A short time later, defendant entered the garage and informed Yancey that he was going to "lie down" with Hauck. Defendant asked Yancey to wait in the living room for him. Yancey did so, and, after approximately an hour, Yancey heard defendant and Hauck arguing in the bedroom. Yancey also heard "a loud thud and a bang" before he heard defendant scream for help. Fearful for defendant's safety, Yancey took a crowbar from Hauck's garage and entered the bedroom where defendant and Hauck were arguing. Yancey saw defendant sitting on the floor, looking as if he had been "roughed up."

Until Yancey entered the bedroom, Hauck apparently had been unaware of Yancey's presence in his home. Hauck demanded to know who Yancey was and then attacked him. Yancey yelled for defendant to help him, but defendant, apparently dazed from his injuries, remained sitting on the floor. Eventually, while Yancey and Hauck were fighting, defendant went to the kitchen and brought back a knife. He slid the knife across the floor to Yancey. Hauck reached the knife first and threatened Yancey with it, but Yancey was able to kick the knife out of Hauck's hand. Hauck and Yancey then struggled for the knife, and, at some point during that struggle, Yancey grabbed the knife and stabbed Hauck in the back and neck.

Hauck fell to the floor and did not move again. At that point, defendant left the room and returned with a heavy pipe. While Hauck was lying on the ground, defendant struck Hauck with the pipe several times on the head. Hauck died of wounds to his head, neck, and chest. Defendant and Yancey fled the scene in Hauck's vehicle. Defendant later used Hauck's credit cards and pawned some of Hauck's jewelry.[1]

---

[1] Testimony also supported an alternative version of the facts, one that suggested that, prior to going to Hauck's home on the day of the murder, defendant

The police arrested both defendant and Yancey in connection with Hauck's death. Defendant initially told the police that he had acted alone, but the physical evidence in the case suggested that at least two people had been involved. The physical evidence was inconclusive as to whether Hauck had died from knife wounds or from blunt force trauma. The state ultimately charged both Yancey and defendant with aggravated murder for Hauck's death.

## PROCEEDINGS BELOW

Defendant and Yancey were tried jointly before a jury. At trial, the state argued that both defendant and Yancey were guilty of aggravated murder for personally and intentionally killing Hauck during the course of a robbery. The state argued in the alternative that defendant and Yancey were guilty of the lesser-included offense of intentional murder. Yancey, but not defendant, testified at trial.

The jury acquitted Yancey, but it found defendant guilty of the lesser-included offense of intentional murder. After the judgment was entered, two jurors contacted defendant's lawyer to relate concerns regarding the jury deliberations in the case. Defendant's lawyer asked the court for permission to contact other jurors, but the court denied that request. Defendant's lawyer then prepared affidavits stating the concerns that the two jurors had expressed, and those jurors signed them. Based on those affidavits, defendant's lawyer moved for a new trial under ORCP 64 B.[2]

---

already had made plans to kill Hauck and take his property and that he then had followed through with those plans. Moreover, defendant told police at one point that he was the person who had killed Hauck by hitting him with a crowbar and stabbing him with a knife before taking Hauck's car, jewelry, and credit cards.

[2] ORCP 64 B provides:

"A former judgment may be set aside and a new trial granted in an action where there has been a trial by jury on the motion of the party aggrieved for any of the following causes materially affecting the substantial rights of such party:

"B(1) Irregularity in the proceedings of the court, jury or adverse party, or any order of the court, or abuse of discretion, by which such party was prevented from having fair trial.

"B(2) Misconduct of the jury or prevailing party.

"B(3) Accident or surprise which ordinary prudence could not have guarded against.

The trial court considered defendant's motion for a new trial, which was based on the affidavits and testimony from the two jurors. Both jurors indicated that 10 out of the 12 jurors had believed that Yancey had acted in self-defense and had acquitted him on that ground. Both jurors also reported that the jury had failed to understand that they could not convict defendant of intentional murder under an aiding-and-abetting theory if they also found that Yancey was not guilty of murder based on self-defense.[3]

Following the hearing, the trial court issued an order granting defendant a new trial. In that order, the trial court described the basis of its ruling:

"Pursuant to ORCP 64 B(1) there was an irregularity in the proceedings of the jury by which Defendant was prevented from having a fair trial; and * * * [p]ursuant to ORCP 64 B(5) the verdict was against law."

According to the trial court, the "irregularity in the proceedings" under ORCP 64 B(1) was juror confusion. The trial court found that the verdict also was "against law" under ORCP 64 B(5) on the ground that defendant could not be guilty of intentional murder under an aiding-and-abetting theory because the jury had found that the only person whom defendant could have aided and abetted, Yancey, was not guilty of murder (on a theory that Yancey had acted in self-defense).[4]

---

"B(4) Newly discovered evidence, material for the party making the application, which such party could not with reasonable diligence have discovered and produced at the trial.

"B(5) Insufficiency of the evidence to justify the verdict or other decision, or that it is against law.

"B(6) Error in law occurring at the trial and objected to or excepted to by the party making the application."

Although ORCP 64 B by its own terms relates to civil trial, ORS 136.535 provides that the rule "appl[ies] to and regulate[s] new trials in criminal actions."

[3] One of the jurors testified, however, that the jury also believed that defendant had intended to cause Hauck's death and had introduced the knife into the fight between Hauck and Yancey with that intent.

[4] ORS 161.155 defines accessory liability:

"A person is criminally liable for the conduct of another person constituting a crime if:

"(1) The person is made criminally liable by the statute defining the crime; or

The state appealed, arguing that the trial court impermissibly had relied on the jurors' affidavits and testimony in deciding to grant defendant a new trial. Defendant cross-appealed, arguing that the trial court had erred by refusing a jury instruction that defendant had requested on the definition of intent.

The Court of Appeals agreed with the state that the trial court had erred in granting defendant a new trial. The Court of Appeals also rejected defendant's argument on cross-appeal that the trial court had erred by refusing to give defendant's requested jury instruction. In light of those conclusions, the Court of Appeals vacated the trial court's order and remanded with instructions for the trial court to reinstate the judgment on the jury's verdict. *Woodman*, 195 Or App at 395. We allowed defendant's petition for review.

## ANALYSIS

Defendant argues that the Court of Appeals erred by vacating the trial court's order for a new trial. Specifically, defendant argues that (1) the trial court correctly had considered the jurors' affidavits in making its ORCP 64 B rulings; (2) even if the trial court had erred by considering the jurors' affidavits, other sufficient evidence existed to support the trial court's ORCP 64 B rulings; and (3) the trial court had erred by refusing to give defendant's requested jury instruction on the meaning of intent.

As a preliminary matter, we reject defendant's second argument—that, even without the jurors' affidavits and testimony about the reasoning underlying the verdict, other sufficient evidence existed to support the trial court's ORCP 64 B ruling. The jury verdict finding defendant guilty of murder and the jury verdict finding Yancey not guilty were both general verdicts, and, as described above, the evidence at

"(2) With the intent to promote or facilitate the commission of the crime the person:

"(a) Solicits or commands such other person to commit the crime; or

"(b) Aids or abets or agrees or attempts to aid or abet such other person in planning or committing the crime; or

"(c) Having a legal duty to prevent the commission of the crime, fails to make an effort the person is legally required to make."

trial could have supported those verdicts under several different theories. Thus, the only evidence before the trial court when it ruled on defendant's motion for a new trial that even tended to show that the jury had acquitted Yancey under a self-defense theory and had convicted defendant under an aiding-and-abetting theory was the jurors' affidavits and testimony. For that reason, the critical issue respecting this aspect of the case is whether the trial court properly considered those affidavits and testimony in making its ORCP 64 B rulings.

■ As we explain below, we agree with the Court of Appeals' ultimate conclusion that the trial court's consideration of the juror affidavits was improper. However, we affirm the Court of Appeals' ORCP 64 B(1) ruling on somewhat different grounds and take this opportunity to clarify the use of juror affidavits in motions for a new trial under ORCP 64 B(1) and ORCP 64 B(5).

ORCP 64 B, which we have quoted in full above, allows a judgment to be set aside if one of the circumstances identified in the rule "materially affect[ed] the substantial rights of [a] party." Here, the trial court granted a new trial under the following two subsections of ORCP 64 B:

> "B(1) Irregularity in the proceedings of the court, jury or adverse party, or any order of the court, or abuse of discretion, by which such party was prevented from having fair trial.
>
> "* * * * *
>
> "B(5) Insufficiency of the evidence to justify the verdict or other decision, or that it is against law."

In addressing the trial court's ORCP 64 B(1) ruling, the Court of Appeals held that, "[r]egardless of the role that juror affidavits and testimony played in the trial court's decision * * *," juror confusion does not constitute an "[i]rregularity in the proceedings" that justifies impeaching a jury verdict. *Woodman*, 195 Or App at 391. In support of that conclusion, the Court of Appeals cited *Whisnant v. Holland*, 206 Or 392, 292 P2d 1087 (1956), and *Ore. Cas. R. R. Co. v. Ore. S. Nav. Co.*, 3 Or 178 (Mult Co Cir Ct 1869), along with several of its own decisions.

Although, as noted, we agree with the Court of Appeals that the trial court should not have granted defendant's motion for a new trial under ORCP 64 B(1), we disagree with the Court of Appeals' statement, quoted above, that *Whisnant* and *Ore. Cas. R. R. Co.* stand for the proposition that juror confusion never may constitute an "[i]rregularity in the proceedings" within the meaning of ORCP 64 B(1). That proposition might be correct, but it does not find support in the cases cited, and it is not necessary to adopt such a rule in this case. Instead, as explained below, those cases stand for the more basic proposition—which is dispositive here—that juror affidavits are inadmissible to establish the jury's mental processes in reaching a verdict, including any confusion that the jurors may have experienced during their deliberations.

In *Whisnant*, the jury asked the bailiff to transmit a request to the trial court for further instructions on negligence. The bailiff apparently did not convey the jury's request fully to the trial judge, and the trial court did not instruct the jury further. On review, the plaintiff argued that she was entitled to a new trial because the jury instructions were confusing and because the bailiff had neglected to inform the trial court of the jury's request for clarification. In support of her argument, the plaintiff submitted juror affidavits attesting to the jury's confusion.

In addressing the plaintiff's assignment of error, this court first explained that "[t]he rule is well-established in this jurisdiction that affidavits of jurors may not be received to impeach their verdict. This includes attempted impeachment of a verdict based upon a juror's misunderstanding of the instructions of the trial court or his mistake as to the evidence." *Whisnant*, 206 Or at 396 (citations omitted). After explaining that it would not consider the juror affidavits for that reason, this court then addressed the merits of the plaintiff's argument by examining the jury instruction that the trial court had submitted and by considering whether the bailiff's failure to pass along the jury's request for clarification had constituted prejudicial error. This court then made its legal ruling on the merits based solely on that part of the record. *Id.* at 397-98.

 *Whisnant* thus stands for only the basic proposition that juror affidavits cannot be used to prove juror confusion. That conclusion is consistent with prior case law. "The affidavit of the juror is inadmissible to impeach the verdict or even to show a mistake in making up the verdict. Nor can it be received to show what passed in the jury room. Nor on account of an afterthought of the juror." *Ore. Cas. R. R. Co.*, 3 Or at 180 (citations omitted). *Whisnant* also is consistent with subsequent case law. *See, e.g., Ertsgaard v. Beard*, 310 Or 486, 496, 800 P2d 759 (1990) (juror affidavits alleging jury misconduct during deliberation must be ignored to extent that they relate to oral exchanges between jurors to persuade others or to mental processes jurors used in reaching verdict); *D.C. Thompson and Co. v. Hauge*, 300 Or 651, 658-60, 717 P2d 1169 (1986) ("[W]e hold that juror affidavits or testimony seeking to impeach a jury's verdict based upon allegations that the jurors misunderstood the effect of their verdict are inadmissible[.]"); *Blanton v. Union Pacific Railroad Co.*, 289 Or 617, 631, 616 P2d 477 (1980) ("juror affidavits may not be used to impeach such a verdict"); *State v. Gardner*, 230 Or 569, 571, 371 P2d 558 (1962) ("We have repeatedly said that affidavits of jurors as to what occurred during their deliberations will not be received to impeach their verdict.").

Here, the trial court erred in using the juror affidavits and testimony to inquire into the jury's deliberations and order a new trial based on "[i]rregularity in the proceedings" under ORCP 64 B(1). Without the juror affidavits, defendant had no factual basis to argue that an irregularity had occurred in the proceedings.

The Court of Appeals next examined the trial court's ORCP 64 B(5) ruling that the jury's verdict was "against law." The trial court had instructed the jury that defendant could be convicted of murder, either because he personally and intentionally caused Hauck's death or because he aided and abetted Yancey in intentionally causing Hauck's death. As noted, Yancey was acquitted, and defendant was convicted. Based on the juror affidavits, the trial court determined that the jury had acquitted Yancey because it had accepted his claim of self-defense, but that the jury had convicted defendant because he had aided and abetted Yancey in killing Hauck. As the trial court analyzed the legal issue,

defendant could not be guilty of intentional murder under an aiding-and-abetting theory when the jury also had determined that his codefendant was not guilty of murder because of self-defense. The trial court concluded that the verdict finding defendant guilty was "against law."

In reviewing that ruling, the Court of Appeals explained that it was irrelevant whether the trial court's legal analysis of the possibly inconsistent verdicts was correct. Rather, the dispositive issue was that the trial court's understanding of the rationale for the jury's verdict was based only on juror affidavits and testimony, and the affidavits and testimony were inadmissible for that purpose. *Woodman*, 195 Or App at 391-92, 391 n 2. Specifically, the Court of Appeals held that a court may consider juror affidavits only if those affidavits disclose "a criminal obstruction of justice such as fraud, bribery, or forcible coercion." *Id.* at 393.

■ We agree with the Court of Appeals that juror affidavits are admissible only if they disclose misconduct such as fraud, bribery, forcible coercion, or other obstruction of justice. This court has observed:

> "While jurors' affidavits are receivable in evidence in the sense that the trial court should permit them to be filed, affidavits which disclose nothing more than oral misconduct during the jury's deliberations cannot impeach a verdict. * * * The affidavit of a juror concerning utterances of other jurors during the deliberations or at any material time cannot warrant the impeachment of a verdict. The kind of misconduct of a juror that will be considered in an attack upon a verdict by a juror's affidavit * * * is misconduct that amounts to fraud, bribery, forcible coercion or any other obstruction of justice that would subject the offender to a criminal prosecution therefor."

*Carson v. Brauer*, 234 Or 333, 345, 382 P2d 79 (1963); *see also Ertsgaard*, 310 Or at 493-96 (discussing permissible and impermissible use of juror affidavits and testimony).

Applying those principles, we again conclude that the trial court erred when it used juror affidavits to determine whether the jury had correctly applied the law. Defendant did not allege that any juror had engaged in fraud, bribery, coercion, or other obstruction of justice that would

constitute misconduct. In those circumstances, the trial court lacked a legal basis for using juror affidavits and testimony to grant a new trial.

■ As we discussed above with respect to the trial court's conclusion as to "irregularity" in the proceedings, without the juror affidavits the trial court could not have concluded that the jury's verdict was "against law" under ORCP 64 B(5). Indeed, the trial court specifically stated that, "without the input from the jurors," sufficient evidence supported the verdict. The trial court correctly characterized the evidence in the record as sufficient to support a lawful verdict based on the jury finding that defendant was guilty of murder as a principal, rather than as an aider or abettor of Yancey's actions. Evidence in the record supported a finding that defendant and not Yancey had inflicted the fatal blows on Hauck. Defendant told police that he was solely responsible for killing Hauck, and the physical and testimonial evidence permitted the jury to find that Hauck was killed either by defendant wielding the metal pipe or by Yancey stabbing him. In the absence of any basis, other than the juror affidavits, to support the trial court's conclusion that the verdict was "against law," that conclusion was error.

■ As noted previously, defendant filed a cross-appeal challenging the trial court's refusal to give his requested instruction regarding the element of intent in the crime of murder. At trial, defendant asked the trial court to give the following instruction relating to the element of intent:

> "A person acts intentionally or with intent when a person acts with a conscious objective to cause a particular result."

The trial court refused to give that proffered instruction and, instead, gave an instruction based on the intent instruction in the Uniform Criminal Jury Instructions. *See* UCrJI 1034 ("intent" instruction). Specifically, the trial court instructed the jury:

> "To establish the lesser included crime of Murder[,] the State must prove beyond a reasonable doubt each of the following three material elements: First, that the act occurred in Linn County, Oregon; second, that the act occurred on or between June 5 and June 8th, 2001; and finally, that

[defendant] intentionally caused the death of [the victim], another human being.

"As used in the phrase 'intentionally caused the death of [the victim],' a person acts intentionally or with intent when the person acts with a conscious objective either to cause a particular result, or to engage in particular conduct."

Defendant assigned error to the giving of the intent instruction and to the trial court's refusal to give his alternative instruction.

The Court of Appeals first observed that "[a] refusal to give a requested instruction is not error if the instruction given by the court, although not in the form requested, adequately covers the subject of the requested instruction." *Woodman*, 195 Or App at 395 (internal citation and quotation marks omitted). The court then stated that defendant's proffered instruction was a correct statement of the law and may have been "more succinct than the one given," but held that, because the trial court's instruction "correctly stated the law," there was no error. *Id.*

On review, defendant contends that the trial court's instruction was incorrect as a matter of law because, to be guilty of intentional murder, a defendant must have acted with the specific intent to cause the victim's death. According to defendant, the trial court erred by refusing to omit the phrase "or to engage in particular conduct" from the instruction, leaving the jury with the mistaken impression that it could find that defendant had acted intentionally if he intended to "cause a particular result" *or* if he "engage[d] in particular conduct," but did not intend a particular result from that conduct. Specifically, defendant argues that the instructions permitted the jury to find defendant guilty of murder if it found that defendant intentionally had "engage[d] in particular conduct"—sliding the knife to Yancey—even if the jury believed that defendant did not intend for Yancey to use the knife to kill Hauck.

Defendant claims that the jury instructions permitted the jury to believe the version of the facts that he argued at trial—that Hauck had died from the knife wounds caused by Yancey, but that defendant had not intended to kill

Hauck, either when he slid the knife to Yancey or at any other relevant time—and still convict him of murder. Because those instructions permitted the jury to convict him of murder without finding that he intended to cause Hauck's death, defendant argues, they were erroneous. *See State v. Pine*, 336 Or 194, 209-10, 82 P3d 130 (2003) (conviction reversed because instructions permitted jury to find defendant guilty even if it failed to find each element of offense).

■ In determining whether it was error to give a particular instruction, we read the instructions as a whole to determine whether they state the law accurately. *See State v. Oatney*, 335 Or 276, 290, 66 P3d 475 (2003), *cert den*, 540 US 1151 (2004) (so stating); *State v. Barnes*, 329 Or 327, 334, 986 P2d 1160 (1999) (same). In Oregon, "[a] person commits criminal homicide if, without justification or excuse, the person intentionally, knowingly, recklessly or with criminal negligence causes the death of another human being." ORS 163.005(1). "[C]riminal homicide constitutes murder * * * [w]hen it is committed intentionally[.]" ORS 163.115(1)(a). The term " '[i]ntentionally' * * * means that a person acts with a conscious objective to cause the result or to engage in the conduct so described," unless the context requires otherwise. ORS 161.085(7).

Defendant is correct that the phrase "or to engage in particular conduct" in the intent instruction, if read in isolation, might suggest that a person could be convicted of murder if the person "engaged in conduct" that "cause[d] the death of another human being," even if the person did not intend that result. Such a conviction, defendant argues, would be improper, because murder requires that the defendant *intend* that his conduct result in the death of the victim. Therefore, according to defendant, in the context of a murder charge, only the first part of the ORS 161.085(7) definition of "intentionally"—that the person "act[ ] with a conscious objective to cause the result" [*i.e.*, the death of the victim]—is applicable, and only that part of the definition should be included in the instruction. It was error, in defendant's view, to instruct the jury that it could find defendant guilty of murder if it determined that he had "act[ed] with a conscious objective * * * to engage in particular conduct."

In our view, reading the instructions as a whole, rather than examining the intent instruction standing alone, the instructions accurately reflected the statutory requirements. In the context of the intentional murder charge, the jury would have understood the words "particular conduct" in the phrase "conscious objective to * * * engage in particular conduct" to mean conduct intended to cause the death of another. So understood, the "engage in particular conduct" part of the instruction conveyed the same meaning as the "cause a particular result" part of the instruction because both parts required the jury, to convict defendant of intentional murder, to find that defendant acted "with a conscious objective" that his actions would result in the death of Hauck. Here, the trial court first told the jury that "the State must prove beyond a reasonable doubt * * * that [defendant] intentionally caused the death of [Hauck]." The court then stated that the phrase "intentionally caused the death" of Hauck means that "the person acts with a conscious objective either to cause a particular result, or to engage in particular conduct." Those instructions correctly told the jury that the prohibited conduct to which the intent element applied was "caus[ing] the death of [Hauck]." Defendant's reading of the instructions as permitting the jury to find him guilty of murder based on a finding only that he had a conscious objective to "engage in particular conduct," such as sliding the knife to Yancey, and not a conscious objective to cause Hauck's death, is not a reasonable one, when the instructions are read as a whole.[5] We conclude that the jury instruction about which defendant complains was not erroneous.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

---

[5] In concluding that the trial court's instruction, considered as part of the instructions as a whole, was not legally erroneous, we do not necessarily approve of that instruction. Defendant may be correct that the instruction would have been clearer if the trial court had omitted the phrase "or to engage in particular conduct."