Argued and submitted September 7, 2006, decision of Court of Appeals reversed; judgment of circuit court reversed, and case remanded to circuit court for further proceedings March 1, 2007

STATE OF OREGON,
*Respondent on Review,*

*v.*

KARLA CROSBY,
*Petitioner on Review.*

(CC0112-38549; CA A120319; SC S53295)

154 P3d 97

Robin A. Jones, Senior Deputy Public Defender, argued the cause for petitioner on review. With her on the briefs were Peter Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services, Salem.

Christina M. Hutchins, Assistant Attorney General, argued the cause for respondent on review. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General, Salem.

Before De Muniz, Chief Justice, and Carson, Gillette, Durham, Balmer, and Kistler, Justices.**

** Carson, J., retired December 31, 2006, and did not participate in the decision of this case. Riggs, J., retired September 30, 2006, and did not participate in the consideration or decision of this case. Walters and Linder, JJ., did not participate in the consideration or decision of this case.

DE MUNIZ, C. J.

## DE MUNIZ, C. J.

The issue in this criminal case is whether the trial court erred when it attempted to clarify a jury instruction defining the mental state required to convict defendant of the crimes at issue in this case. The Court of Appeals held that defendant failed to preserve any error because she did not object to the trial court's original instruction defining the mental state "recklessly." *State v. Crosby*, 204 Or App 75, 129 P3d 699 (2006). We reach a different conclusion. Accordingly, we reverse the Court of Appeals decision and the trial court's judgment.

We state the facts of this case summarily. Defendant lived with her mother. When her mother's health declined significantly, defendant became her mother's only caregiver. In December 2001, defendant brought her mother to an emergency room because the mother had difficulty swallowing. Hospital staff suspected abuse and neglect because defendant's mother was dehydrated, malnourished, and covered with feces. Mother also had a number of serious decubitus ulcers—more commonly known as bedsores. A doctor determined that defendant's mother was preterminal and that only "comfort care" was appropriate. Defendant's mother was transferred to a convalescent home, where she died a few days later. The autopsy report concluded that mother had died of "infected decubitus ulcers with probable sepsis."

Defendant was charged with two counts of murder by abuse, ORS 163.115(1)(c). The first count charged her with the murder of a dependent person by neglect and maltreatment, ORS 163.115(1)(c)(B). The second count charged her with the murder of a dependent person while having previously engaged in a pattern or practice of assault on the victim, ORS 163.115(1)(c)(A). As to the "pattern or practice of assault," the state did not argue that defendant had beaten her mother; rather, the state argued that defendant's neglect had caused injuries that constituted an assault.[1]

---

[1] During closing arguments to the jury, the state contended:

"Pattern or practice of assaults. It sounds kind of weird. It sounds like the State is alleging that when nobody was watching, [defendant] beat up her mother or something. That's not the allegations. Not the allegations at all.

At trial, both sides offered expert testimony about how decubitus ulcers develop. The experts frequently referred to the development of decubitus ulcers as "skin breakdown." That term, "skin breakdown," will reappear later in the case.

The trial court instructed the jury on the elements of the crimes charged and several lesser-included offenses. As to the lesser-included offenses of first-degree manslaughter of a dependent person, the instructions stated that a person commits the crime "if the person recklessly causes the death of a dependent person" under certain conditions. *See* ORS 163.118(1)(c) (defining offense).

The court defined "recklessly" as follows:

"A person acts recklessly if that person is aware of and consciously disregards a substantial and unjustifiable risk either

"(1)   That a particular result will occur; or

"(2)   That a particular circumstance exists.

"The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

That instruction was essentially identical to Uniform Criminal Jury Instruction 1036.

After the jury began deliberations, it asked the court to clarify two phrases that the court had used to define the mental states required for the crimes.[2] Regarding the phrase

"Remember we talked about whether failure to do something, the failure to act can cause an assault * * *. * * * [Mother] had ulcers, decubitus ulcers, bedsores in the various stages of healing. * * * [E]ach one of those is a separate assault. And how can I say that? She [defendant] didn't do anything. By not taking proper care of her mother[,] she caused, she allowed those bedsores to occur. That's an omission. That's a failure to act."

[2] Although defendant argued this case as if the jury's questions related to only the definition of the mental state "recklessly," neither question was so limited. The trial court had used the same phrases that the jury asked about—"that a particular result will occur" and "that a particular circumstance exists"—to define the mental state of "criminal negligence." The trial court had instructed the jury on that mental state as to two other lesser-included offenses, both variants of second-degree manslaughter of a dependent person (ORS 163.125(1)(c)).

"that a particular result will occur," the jury asked whether it should assume or infer that that phrase here meant death. As to the phrase "that a particular circumstance exists," the jury asked whether that referred to death or "just exist[e]nce of skin breakdown."

The court responded with a written clarifying instruction. The clarifying instruction provided, in part:

> "You have been provided with definitions of certain words and phrases. The court expects you to apply or use other words or phrases which have not been defined under their ordinary meaning as you understand [them]. If you do not know the ordinary meaning of a particular word or phrase, you may ask for a definition. The court may provide a definition or may inform you that no further definition will be provided.
>
> "In regard to the two phrases set out above, it is important to not take them out of context. These phrases appear in the instructions labeled 'Recklessly' and 'Criminal Negligence.' You must read and consider those instructions in their entirety and as part of all of the instructions.[3]
>
> "In this case, the phrase 'a particular result' can only mean the death of [defendant's mother]. *The phrase 'that a particular circumstance exists' does not necessarily mean only one thing in this case. Based upon your application of all of the court's instructions and definitions, you should decide what circumstances should be considered in your deliberations.*"

(Emphasis added.)

Defendant objected to that clarifying instruction. Defendant disputed the trial court's assertion that "particular circumstance" could mean more than one thing. In the context of the charged offense, defendant argued, "particular circumstance" could mean only one thing: the death of defendant's mother.

---

We do not address the "criminal negligence" mental state here. The parties did not argue how the clarifying instruction might have affected the definition of "criminal negligence" or the second-degree manslaughter charge, and they do not suggest that any issue regarding "criminal negligence" would affect the outcome.

[3] The court had provided the jury with written copies of its original instructions, which the jury took to the jury room.

The jury acquitted defendant of the murder charges, but it found her guilty of two lesser-included offenses: first-degree manslaughter of a dependent person by neglect and maltreatment, and first-degree manslaughter of a dependent person while having previously engaged in a pattern or practice of assault. *See* ORS 163.118(1)(c) (defining both counts). The court sentenced defendant to ten years' imprisonment.

On appeal, defendant argued that the clarifying instruction had "permitted the jury to convict defendant based on defendant's awareness of 'skin breakdown' without regard to whether the state proved that she was aware that 'skin breakdown' created a risk of death." The state contended that the trial court's clarifying instruction was correct because, for purposes of the offense at issue, "circumstance" could mean more than one thing, and the jury had been admonished to consider it in context with the other jury instructions.

The Court of Appeals ultimately affirmed. *Crosby*, 204 Or App at 81. Initially, the court agreed with the defendant. It reasoned that the meaning of "the result" or "the circumstance" in the definition of "recklessly" depended on the offense at issue. *Id.* at 80. Under ORS 163.118(1)(c), first-degree manslaughter requires the state to prove that " 'a person recklessly cause[d] the death of * * * a dependent person,' " either by " 'neglect or maltreatment' " or after " 'a pattern or practice of assault or torture.' " *Id.* at 79-80 (quoting statute). The Court of Appeals concluded that, for manslaughter, "the result" or "the circumstance" necessarily would mean death. *Id.* at 80-81. The Court of Appeals held, however, that the clarifying instruction was not erroneous by itself because "the [trial] court refrained from giving further definition to the term 'circumstances' and informed the jury to return to the instructions given at the outset." *Id.* at 81. The clarifying instruction was only erroneous to the extent that the original jury instructions were erroneous. *Id.* Because defendant had not objected to the original instructions, the Court of Appeals concluded, defendant had not preserved any claim of error. *Id.*

■ Before turning to the merits, we must address a preservation issue—though not the same preservation issue

addressed by the Court of Appeals.[4] The state argued to the Court of Appeals (but not to this court) that defendant had failed to preserve any error because she had not made her objection with enough specificity.

■     "Under ORCP 59 H, to preserve an error in instructions given to a jury for appellate review, the aggrieved party must point out the error to the trial court, and a notation of that exception must be made after the court instructs the jury." *Bennett v. Farmers Ins. Co.*, 332 Or 138, 152-53, 26 P3d 785 (2001) (emphasis omitted).[5] Here, defendant both objected to the instruction and made an exception on the record.

In objecting to a jury instruction, "[a]ny point of exception shall be particularly stated[.]" ORCP 59 H (2002).[6] Defendant contended that the clarifying instruction misinformed the jury about the object of the mental state "recklessly," citing the appropriate statutory definition.

Defendant's objection before the trial court proceeded as follows. After the jury sent back its questions, the court discussed the matter with counsel. Regarding the jury's question about whether "particular result" meant death, defendant's counsel argued:

> "[Defense Counsel]:   * * * I think that the jury should be told that the particular result is the result of death because that's what she's charged with.
>
> "* * * * *
>
> "In this case, *she's charged with causing a death, so I think the only particular risk that makes sense is the risk of death*."

(Emphasis added.)

Before the parties discussed the jury question about particular circumstances, the trial court left the bench and

---

[4] Before addressing the preservation issue relied on by the Court of Appeals, we must first consider defendant's arguments on the merits. We will return to that preservation question afterward.

[5] ORCP 59 H applies to criminal trials. ORS 136.330(2).

[6] Since the trial, ORCP 59 H has been amended. Those amendments are not relevant to this case.

drafted a clarifying instruction. The draft accepted defendant's argument that "particular result" could mean only death. However, the draft also directed the jury that "particular circumstance" did not mean only one thing in the case.

Defendant then renewed her earlier argument about "particular result," but this time in the context of the "particular circumstance" question:

"[Defense Counsel]:   Your Honor, I don't know if this is a repeat, but in the—in the phrase on the second page, the full paragraph, the phrase that, 'A particular circumstance exists, does not necessarily mean only one thing in this case.' With all due respect, I think it does.

"*ORS 161.085*, which is on Page 329 of the 2002 statute book, *under Definitions 9 and 10, 9 is recklessly* and 10 is criminal negligence, they both say, person failed—criminal negligence, 'A person fails to be aware of a substantial and unjustifiable risk that the result will occur or that these circumstances exist.'

"I think in the jury instructions they substituted 'a particular' for 'the,' but I think in this case, *a particular circumstance means the circumstance that [victim] would die. I don't—I think that in the statute by using the word 'the,' I don't think it can mean more than one thing.*"

(Emphasis added.)

After some discussion, the court announced the changes it would make to the jury instructions. It did not change the "particular circumstance" instruction. Defendant took an exception, reiterating her arguments:

"Your Honor, for the record, we would take exception to that, because I believe *the statute by saying 'the circumstances' is referring to a circumstance leading to the crime for which a person is charged,* in this case leading to murder.

"And I think that the way that this [clarifying instruction] is phrased, that it does not necessarily mean one thing, you know, it doesn't—it can mean—it can talk about different circumstances, but I think the jury needs to be told that all of those circumstances must lead to death."

(Emphasis added.)

■■■ We conclude that defendant stated her objection with enough particularity to apprise the trial court that it was erroneously explaining ORS 161.085(9) to the jury. Defendant argued that the clarifying instruction gave "particular circumstance" a much broader interpretation than that permitted by the statutory definition. That was enough to preserve for review the question of the statute's true meaning and scope. *See, e.g., State v. Pine*, 336 Or 194, 202 n 3, 82 P3d 130 (2003) (court could consider how to interpret statutory term, even though term's meaning had not been argued at trial, because defendant's objection to jury instruction had put meaning of statute into issue).

We turn to the merits. The issue here is whether the trial court correctly stated the law when it instructed the jury that "[t]he phrase 'that a particular circumstance exists' does not necessarily mean only one thing in this case." In determining whether the trial court erred, "we read the instructions as a whole to determine whether they state the law accurately." *State v. Woodman*, 341 Or 105, 118, 138 P3d 1 (2006) (citations omitted).

We first consider the mental state requirements for crimes. In Oregon, criminal statutes generally define crimes using one of four different mental states: intentionally, knowingly, recklessly, and criminally negligent.[7] ORS 161.085 defines each of those mental states:

"(7) 'Intentionally' or 'with intent,' when used with respect to a result or to conduct described by a statute defining an offense, means that a person acts with a conscious objective to cause the result or to engage in the conduct so described.

"(8) 'Knowingly' or 'with knowledge,' when used with respect to conduct or to a circumstance described by a statute defining an offense, means that a person acts with an awareness that the conduct of the person is of a nature so described or that a circumstance so described exists.

"(9) 'Recklessly,' when used with respect to a result or to a circumstance described by a statute defining an

---

[7] The statutes also contemplate that the legislature may create crimes that do not require any mental state at all. *See* ORS 161.105 (listing circumstances when criminal statute does not require mental state).

offense, means that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. * * *

"(10) 'Criminal negligence' or 'criminally negligent,' when used with respect to a result or to a circumstance described by a statute defining an offense, means that a person fails to be aware of a substantial and unjustifiable risk that the result will occur or that the circumstance exists. * * *"

■      Those definitions require each mental state to be directed toward something. "Intentionally," for example, requires more than just some conscious act in the abstract— it requires that the conscious act be directed either toward causing a certain result or toward engaging in certain conduct. The Model Penal Code—upon which the Oregon Criminal Code was indirectly based, *see State v. Barnes*, 329 Or 327, 336-37, 986 P2d 1160 (1999) (Model Penal Code as modified in New York statutes)—refers to the object of the mental state as the "material element" of the offense. *See* Model Penal Code § 2.02 comment 1 n 1 at 229 (Proposed Official Draft 1962) ("The 'material elements' of offenses are thus those characteristics (conduct, circumstances, result) of the actor's behavior that, when combined with the appropriate level of culpability, will constitute the offense.").

The statutory definitions of the mental states refer to three different types of material element: a conduct, a circumstance, or a result. In Oregon, each mental state relates to two of those three different categories. *See* ORS 161.085(7) ("intentionally" involves mental state as to conduct or result, but not circumstance); ORS 161.085(8) ("knowingly" involves mental state as to conduct or circumstance, but not result); ORS 161.085(9) ("recklessly" involves mental state as to result or circumstance, but not conduct); ORS 161.085(10) ("criminal negligence" involves mental state as to result or circumstance, but not conduct). The Model Penal Code's *mens rea* provisions use a similar structure with similar terminology. *See* Paul H. Robinson and Jane A. Grall, *Element Analysis in Defining Criminal Liability: The Model Penal Code and Beyond*, 35 Stan L Rev 681, 697 (1983) (table outlining Model Penal Code's four mental states—purposely,

knowingly, recklessly, and negligently—and three categories of material elements—conduct, circumstance, or result).

Conduct, circumstance, and result are only general categories for the types of material elements that will be found in criminal statutes. The substantive criminal statute itself will describe the specific material element to which the mental state relates. *See* ORS 161.085(7)-(10) (all referring to the conduct, circumstance, or result "described by [the] statute defining an offense"). For example, in *State v. Blanton,* 284 Or 591, 588 P2d 28 (1978), a statute made it a felony to "knowingly" give drugs to a person under the age of 18. *Id.* at 593. This court concluded that "the age of the recipient is a material element of the offense," and so the state had to prove that defendant knew that the purchaser was under 18. *Id.* at 595. The statute thus required defendant to act knowingly as to a *circumstance*—specifically, the purchaser's age.

Oregon law does not define what qualifies as a "result" or "circumstance," although it does define "conduct." *See* ORS 161.085(4) (conduct is "act or omission and its accompanying mental state"). Without definitions, it is not always easy to determine how to categorize a specific material element of a crime. For example, Robinson and Grall note the difficulties involved in determining whether the statutory phrase " 'the death of another human being' " consists of one result element, or of a result element (death) and a circumstance element (the being that died was human). 31 Stan L Rev at 707 (quoting Model Penal Code § 210.1; footnote omitted). It may not always be necessary to categorize every material element so precisely, but correct categorization could make a difference in some situations.[8]

The issue here concerns the definition of "recklessly." As noted, "recklessly" means that a person "is aware of and consciously disregards a substantial and unjustifiable risk" that a result described by a criminal statute will occur, or that a circumstance identified by a criminal statute exists. ORS 161.085(9).

---

[8] Robinson and Grall note one hypothetical. "[I]f a hunter aims and fires at a creature moving behind cover, he, no doubt, intends to cause death. If, in fact, he kills a fellow hunter, his culpability depends on his awareness of the creature's status as a human being." *Id.* at 690 n 39.

The jury instruction defining "recklessly" was worded differently than the statute, ORS 161.085(9). The instruction not only omitted the introductory phrase from the statute ("when used with respect to a result or to a circumstance described by a statute defining an offense"), but it also added words that apparently were intended to invoke the context of the substantive criminal statute: The substantial and unjustifiable risk must be either "[t]hat *a particular* result will occur" or "[t]hat *a particular* circumstance exists." (Emphasis added.) The terms "particular circumstance" or "particular result" may have been unclear, but that is beside the point: The jury, by its questions, had asked the court to clarify those phrases.

With that background, we return to the issue here. Defendant was convicted of two lesser-included offenses of first-degree manslaughter of a dependent person, ORS 163.118(1)(c). That statute uses the word "recklessly," so we must examine ORS 163.118(1)(c) to see whether "particular circumstance" could have more than one meaning in this case.

ORS 163.118(1)(c) provides, in part:

"Criminal homicide constitutes manslaughter in the first degree when

"* * * * *

"(c)   A person recklessly causes the death of * * * a dependent person, as defined in ORS 163.205,[9] and:

"(A)   The person has previously engaged in a pattern or practice of assault or torture of the victim * * *; or

"(B)   The person causes the death by neglect or maltreatment, as defined in ORS 163.115."

Death is not merely an accessory fact that accompanies the defendant's conduct. The object of the mental state "recklessly" is "causes death." That object, "death," is not a "circumstance" here; no defendant could be reckless "that the circumstance [death] exists." ORS 161.085(9). Instead, death

---

[9] A "dependent person" is "a person who because of either age or a physical or mental disability is dependent upon another to provide for the person's physical needs." ORS 163.205(2)(b).

is a *result*; a defendant *can* be reckless "that the result [death] will occur." *Id.* For a defendant to have committed manslaughter under ORS 163.118(1)(c), then, the defendant must have been "aware of and consciously disregard[ed] a substantial and unjustifiable risk" of causing a result: death.[10]

■      Thus, ORS 163.118(1)(c) does not use "recklessly" to refer to a defendant being "aware of and consciously disregard[ing] a substantial and unjustifiable risk" that "skin breakdown" exists. ORS 161.085(9). In fact, for the purposes of this case, ORS 163.118(1)(c) does not use "recklessly" to refer to a defendant being "aware of and consciously disregard[ing] a substantial and unjustifiable risk * * * that [*any*] circumstance exists." *Id.* (emphasis added).[11]

---

[10] It is possible that "recklessly" does relate to one circumstance—the circumstance that the victim was a "dependent person as defined in ORS 163.205." ORS 163.118(1)(c). But we do not need to resolve that question here. The parties did not argue that issue at any point, and the mother's status as a dependent person—or defendant's awareness of that fact—are not in dispute.

[11] The parties largely argued this case as if the trial court's clarifying instruction applied only to first-degree manslaughter. But that is inaccurate; we make a brief detour to explain.

The trial court's clarifying instruction explained what a mental state meant for the whole case, not just for first-degree manslaughter. The mental state of "recklessly" applied not just to first-degree manslaughter of a dependent person, but also to murder by abuse, ORS 163.115(1)(c). If the mental state for murder by abuse referred to more than one "particular circumstance," then the trial court's clarifying instruction would have been accurate. As we shall explain, however, the mental state for murder by abuse applies only to a result, not to a circumstance.

Murder by abuse occurs when a defendant, *"recklessly under circumstances manifesting extreme indifference to the value of human life,* causes the death of * * * a dependent person" under specified circumstances. ORS 163.115(1)(c) (emphasis added). The use of the word "circumstances" so close to the word "recklessly" might suggest that "particular circumstance" *does* mean more than one thing in this case. This court's case law explains, however, that "circumstances manifesting extreme indifference to the value of human life" is not part of the mental state "recklessly." *See State v. Cunningham*, 320 Or 47, 60, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995) (phrase "circumstances manifesting extreme indifference * * *" in first-degree manslaughter statute "does not create an additional culpable mental state" (internal quotation marks and citation omitted)); *State v. Boone*, 294 Or 630, 634, 661 P2d 917 (1983) (reaching same conclusion as to second-degree assault statute).

Thus, the murder by abuse statute, like the statute for manslaughter of a dependent person, requires recklessness as to a result—causing death. It does not require recklessness as to a circumstance.

We conclude, then, that the trial court's clarifying instruction was erroneous. The trial court told the jury that "particular circumstance" could mean more than one circumstance, and told the jury that it should decide which circumstances to consider. Both those directions were wrong. In defining the reckless mental state for this case, the phrase "[t]hat a particular circumstance exists," could not correctly refer to any circumstance at all—not to the existence of skin breakdown, and not to any other possible circumstance.

The state argues that the jury instructions, taken as a whole, nevertheless correctly stated the legal standard required to convict defendant. The clarifying instruction referred the jury back to the original instructions, which required the jury to find that defendant had "recklessly caused the death of [the victim]" in order to convict. The state relies on this court's recent decision in *State v. Woodman*, 341 Or at 116-19 (concluding that trial court did not err when it instructed jury in murder case that "phrase 'intentionally caused the death of [the victim]'" meant "a conscious objective either to cause a particular result, or to engage in particular conduct").

We reject the state's argument. The criminal statutes at issue here essentially required defendant to have consciously disregarded a specific risk—the risk that death would occur. The clarifying instruction, though, allowed defendant to be convicted for consciously disregarding some unspecified risk (presumably the risk that defendant's mother would get bedsores), even if defendant had no idea that death might result. The two risks are very different. By incorrectly defining "recklessly" in the clarifying instructions, the trial court wrongly broadened the meaning of "recklessly caused the death of [the victim]" in the original instructions.

This case also differs in crucial ways from *Woodman*. To understand those differences, we turn to that case.

In *Woodman*, the defendant and another man, Yancey, had been charged with murdering the victim, Hauck, during a fight. At one point during the fight, defendant slid a knife to Yancey, who later stabbed Hauck with it. The trial court instructed the jury that, for the defendant to be guilty of

intentional murder, " 'the State must prove beyond a reasonable doubt * * * that [the defendant] intentionally caused the death' " of Hauck. *Id.* at 116-17. The trial court informed the jury that the phrase "intentionally caused the death" meant that "the person acts with a conscious objective either to cause a particular result, or to engage in particular conduct." *Id.* at 117. The defendant argued that that instruction incorrectly left the jury with the impression that it could convict the defendant of murder if it found that the defendant intentionally had engaged in particular conduct, even if the defendant had not intended death to result from that conduct.

This court concluded that the intent instruction was accurate in the context of the jury instructions as a whole:

> "In the context of the intentional murder charge, the jury would have understood the words 'particular conduct' in the phrase 'conscious objective to * * * engage in particular conduct' to mean conduct intended to cause the death of another. So understood, *the 'engage in particular conduct' part of the instruction conveyed the same meaning as the 'cause a particular result' part of the instruction* because both parts required the jury, to convict defendant of intentional murder, to find that defendant acted 'with a conscious objective' that his actions would result in the death of Hauck."

*Id.* at 119 (alteration in original; emphasis added). This court went on to state:

> "Those instructions correctly told the jury that the prohibited conduct to which the intent element applied was 'caus[ing] the death of [Hauck].' Defendant's reading of the instructions as permitting the jury to find him guilty of murder based on a finding only that he had a conscious objective to 'engage in particular conduct,' such as sliding the knife to Yancey, and not a conscious objective to cause Hauck's death, is not a reasonable one, when the instructions are read as a whole."

*Id.* (alterations in original; footnote omitted).

*Woodman* shows how important it is to correctly identify the specific material element in the statute to which the mental state relates. *Woodman* recognized that the statutory mental state in that case ("intentionally") had as its

object " 'caus[ing] the death of [Hauck].' " *Id.* The instructions in *Woodman*, taken as a whole, had told the jury to determine whether the defendant had intended to cause Hauck's death. Beyond that, it did not make a difference whether one categorized "causing death" as a result or as conduct, so the court in *Woodman* did not decide that question.

Although the jury instructions in *Woodman* correctly identified the object of the statutory mental state, the clarifying instruction here did not. It told the jury that "recklessly" could take as its object something other than death, and it invited the jury to choose what that something was.

The state argues that, even if the trial court's clarifying instruction was erroneous, it applied only to defendant's manslaughter conviction for neglect and maltreatment. The state claims that the jury's questions, defense counsel's objection, and the trial court's explanation all focused on skin breakdown and sepsis, not assault. Thus, the state contends, defendant's conviction for manslaughter while having previously engaged in a pattern or practice of assault would still stand.

The state's argument is somewhat surprising because, as we noted earlier, the charges involving a "pattern or practice of assault" also depended on decubitus ulcers caused by neglect. 342 Or at 421-22 n 1. In any event, we reject the argument. The trial court erroneously instructed the jury as to the definition of "recklessly." That term applies to both types of first-degree manslaughter of a dependent person, whether by neglect or maltreatment or after previously engaging in a pattern or practice of assault. *See* ORS 163.118(1)(c) (manslaughter requires that "a person recklessly cause[] the death of * * * a dependent person"). Because the trial court's clarifying instruction applied to both charges of first-degree manslaughter, the error invalidates the conviction on both counts.

■ Finally, we address the preservation argument accepted by the Court of Appeals. The state argues that any problem with the clarifying instruction also had been present in the original instruction defining "recklessly," and so defendant needed to object to that original instruction.

We disagree. The original jury instruction defined "recklessly" in general terms. That definition had not been tailored to the particular crimes at issue here; it was intended to suffice for any crime that used the word "recklessly." If the instruction was defective at all, it was because it was ambiguous about what "particular result" and "particular circumstance" meant.[12]

The clarifying instruction, in contrast, had been tailored to the crimes and facts at issue in this case. It was not ambiguous—it was clearly and specifically wrong. It allowed the jury to convict defendant of first-degree manslaughter for consciously disregarding the risk that her mother would get bedsores.

In summary: What "recklessly" means depends on how a substantive criminal statute uses that term. The object of the recklessness will be described in the statute, and it will be either a result or a circumstance. Here, the pertinent manslaughter statute referred to only a result, the death of the victim. The trial court should have instructed the jury that "particular result" meant death, and that "particular circumstance" did not apply to this case. Instead, the trial court instructed the jury that "particular circumstance" could mean more than one thing, implied to the jury that "exist[e]nce of skin breakdown" could be one of the circumstances, and otherwise authorized the jury to pick any other circumstance that it thought appropriate. The instruction incorrectly conveyed the law to the jury and very likely influenced its verdict, given that the instruction responded to its question. *See Pine*, 336 Or at 209-10 (court should reverse for error in jury instructions if "the instruction probably created an erroneous impression of the law in the minds of the

---

[12] We note, however, that the current Uniform Criminal Jury Instruction defining "recklessly" exhibits the same deficiency that we discuss in this opinion. The bare terms "particular result" and "particular circumstance" do not adequately convey to a jury the required link between reckless conduct and the results or circumstances specified in the underlying criminal statute. Furthermore, a trial court should not instruct the jury that the mental state relates to both a result and a circumstance, unless that is accurate in the context of the particular crimes that have been charged. As this opinion demonstrates, a defendant's objection in a similar context to the Uniform Criminal Jury Instruction defining "recklessly" would be well taken.

jur[ors] which affected the outcome of the case" (alteration in original; citations and internal quotations marks omitted)).

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.