Argued and submitted August 13, 2010, affirmed March 14, 2012

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JAMES WILLARD DURST,
*Defendant-Appellant.*

Washington County Circuit Court
C062841CR; A138259

273 P3d 370

Matthew McHenry argued the cause for appellant. With him on the briefs was Michael R. Levine.

Jennifer S. Lloyd, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

DUNCAN, J.

## DUNCAN, J.

Defendant appeals a judgment convicting him of one count of unlawful use of a weapon, ORS 166.220, one count of menacing, ORS 163.190, and one count of assault in the fourth degree, ORS 163.160, arguing that the trial court erred in instructing the jury. For the reasons explained below, we affirm defendant's convictions.

The relevant facts are as follows. Defendant was riding a bicycle on a road encircling a mall parking lot when he collided with a van driven by the victim. The victim stopped and got out of the van to make sure that defendant was not injured, but defendant pedaled away from the scene. The victim drove around the mall parking lot looking for defendant in order to ascertain defendant's name. He soon located defendant, stopped his vehicle nearby, and got out. When the victim asked defendant's name, defendant aimed his bicycle at him and started pedaling hard. Defendant rode into the victim, who put his hands out to block the impact. The victim's thumb was injured in the collision. Then defendant walked back toward the victim, holding a knife. The victim saw a police officer nearby and shouted for help. The officer came over and called for backup, and, eventually, defendant was arrested.

Defendant was later charged with one count of unlawful use of a weapon, one count of menacing, and one count of assault in the fourth degree. During his jury trial, defendant asked the trial court to give the following jury instructions relating to the required culpable mental states for unlawful use of a weapon, as alleged in Count 1, and menacing, as alleged in Count 2:

" 'Intentionally,' as it applies to Count 1, means that [defendant] acted intentionally when he acted with a conscious objective unlawfully to attempt to use the weapon against [the victim] by _____ [to be specified by the state].

" 'Intentionally,' as it applies to Count 2, means that [defendant] acted intentionally when he acted with a conscious objective unlawfully to attempt to place [the victim] in fear of imminent serious injury by _____ [to be specified by the state]."

The trial court declined to give defendant's proposed instructions and instead instructed the jury on the definition of "intentionally" and the elements of each crime. Regarding the term "intentionally," the court gave an instruction based on the then-current uniform criminal jury instruction:[1]

"A person acts 'intentionally' or 'with intent' when that person acts with a conscious objective either:

"(1)   To cause a particular result; or

"(2)   To engage in particular conduct."

Regarding the elements of the crime of unlawful use of a weapon, the court instructed the jury:

"Oregon law provides that a person commits the crime of unlawful use of a weapon if the person attempts to use unlawfully against another any dangerous weapon.

"In this case, to establish the crime of unlawful use of a weapon, the state must prove beyond a reasonable doubt the following three elements:

"(1)   The act occurred in Washington County, Oregon;

"(2)   The act occurred on or about October 7, 2006; and

"(3)   [Defendant] intentionally attempted to use unlawfully against [the victim] any dangerous weapon."

And, regarding the elements of menacing, the court instructed the jury:

"Oregon law provides that a person commits the crime of menacing if, by word or conduct, the person intentionally

---

[1] The Uniform Criminal Jury Instructions were amended in 2007, a few months after the trial in this case. The uniform instruction on "Intentionally and with Intent" now provides:

"A person acts 'intentionally' or 'with intent' when that person acts with a conscious objective to 1A [cause a particular result]/1B [engage in particular conduct].

"When used in the phrase [*quote material element from definition of relevant offense*], 'intentionally' or 'with intent' means that a person acts with a conscious objective to 2A [cause [*specify result*]]/2B [*specify conduct*]."

UCrJI 1035 (italics and third brackets in original).

The goal of the amendment was to "correctly categoriz[e] the material element(s) of the underlying offense(s) and correctly link[ ] the mental state to the material element(s)." Comment to UCrJI 1035. As a result of the amendment, the current uniform instruction is akin to defendant's requested instructions.

attempts to place another person in fear of imminent serious physical injury.

"In this case, to establish the crime of menacing, the state must prove beyond a reasonable doubt the following three elements:

"(1)   The act occurred in Washington County, Oregon;

"(2)   The act occurred on or about October 7, 2006; and

"(3)   [Defendant] intentionally attempted to place another person, [the victim], in fear of imminent serious physical injury by words and conduct."

The jury found defendant guilty on all three counts.

Defendant appeals the resulting judgment, assigning error to the trial court's instruction of the jury. He makes three arguments. First, he argues that neither unlawful use of a weapon nor menacing requires the state to prove that a defendant intended to cause a result; that is, both of those charges require the state to prove only that a defendant intended to engage in particular conduct. Therefore, he contends, under *State v. Crosby*, 342 Or 419, 154 P3d 97 (2007), the court erred in instructing the jury that "[a] person acts 'intentionally' or 'with intent' when that person acts with a conscious objective either: (1) [t]o cause a particular result; *or* (2) [t]o engage in particular conduct" (emphasis added), because no "particular result" applies in this case. Next, defendant argues that, even if his first argument is unavailing, the trial court's jury instructions were insufficient under the Supreme Court's holding in *Crosby* because "the mental state instructions fail[ed] to specify the particular conduct required by the underlying criminal offense." Finally, defendant contends that the instructional error with regard to the counts for unlawful use of a weapon and menacing had a "spillover effect" that requires reversal of his conviction for fourth-degree assault.

As explained below, with respect to defendant's first argument, we conclude that the menacing charge required proof of defendant's intent to engage in particular conduct and his intent to cause a particular result. Therefore, his comparison of this case to *Crosby* is inapposite. Furthermore, in accord with *State v. Woodman*, 341 Or 105, 107, 138 P3d 1

(2006), the jury would not have been misled by the instructions that the court gave. As to defendant's second argument, this court has rejected the interpretation of *Crosby* that he advances. *State v. Pedersen*, 242 Or App 305, 319-20, 255 P3d 556, *rev den*, 351 Or 254 (2011). In light of our disposition of defendant's arguments regarding the trial court's instruction of the jury, we do not address defendant's third argument. Accordingly, we affirm.

We address each of defendant's arguments in turn, beginning with his argument that neither menacing nor unlawful use of a weapon requires proof of intent with regard to a result, and, consequently, the trial court's instruction regarding intent was improper.[2] "In order to determine the specific material element to which a requisite mental state relates, we look to the substantive criminal statute defining the offense at issue." *Pedersen*, 242 Or App at 317 (citing *Crosby*, 342 Or at 428-30). The statute defining menacing, ORS 163.190(1), provides:

"A person commits the crime of menacing if by word or conduct the person intentionally attempts to place another person in fear of imminent serious physical injury."

As noted, defendant argues that that statute requires the state to prove that a defendant had a culpable mental state—*viz.*, intent—with regard to conduct but not with regard to any result. The text of the statute, however, belies that assertion. The statute requires proof that a defendant "intentionally attempt[ed] to place another person in fear of imminent serious physical injury." In order to show that a defendant intentionally attempted to place another person in fear of imminent serious physical injury, the state has to show not only that the defendant intended to engage in particular conduct but also that he or she intended to achieve a particular result. *See Pedersen*, 242 Or App at 317-18 (crime requiring that the defendant "intentionally attempted to cause the death of [the victim]" required the jury to find

---

[2] We address the culpable mental state requirements for menacing, ORS 163.190, immediately below. Because we conclude that that statute requires intent with regard to a result as well as with regard to conduct, and, therefore, that the use of the generic definition of "intentionally," which refers to both conduct and result, was not error, we do not evaluate the culpable mental state requirement for unlawful use of a weapon, ORS 166.220.

"that [the defendant] intentionally engaged in a substantial step (shooting at [the victim]) with intent to cause a particular result ([the victim]'s death)"). Thus, for the crime of menacing, the state had to prove defendant's intent with regard to both conduct and a result in order to secure a conviction, and, therefore, the trial court's use of the general definition of "intentionally," which referred to both conduct and result, was not error. *Cf. Crosby*, 342 Or at 434 (instructional error existed where clarifying instruction indicated that the defendant could have been reckless with regard to a circumstance although the defendant's recklessness with regard to a circumstance was not adequate for conviction of the charged crime).

Moreover, the Supreme Court's holding in *Woodman* demonstrates that the trial court did not err in instructing the jury because the instructions correctly informed the jury of the elements to which the intent element applied. "In determining whether it was error to give a particular instruction, we read the instructions as a whole to determine whether they state the law accurately." 341 Or at 118. In *Woodman*, the defendant, who had been convicted of murder, argued that the trial court's instruction on the meaning of intent, which explained that meaning with regard to conduct and with regard to result, had misled the jury. The trial court had instructed the jury as follows:

" 'To establish the lesser included crime of Murder[,] the State must prove beyond a reasonable doubt each of the following three material elements: First, that the act occurred in Linn County, Oregon; second, that the act occurred on or between June 5 and June 8th, 2001; and finally, that [defendant] intentionally caused the death of [the victim], another human being.

" 'As used in the phrase "intentionally caused the death of [the victim]," a person acts intentionally or with intent when a person acts with a conscious objective either to cause a particular result, or to engage in particular conduct.' "

*Id.* at 116-17 (brackets in original). The defendant argued that the intent instruction allowed the jury to convict him based on his intentional conduct, which included providing a knife to his codefendant, even if the jury was not convinced

that he had intended that conduct to result in the death of the victim. The Supreme Court rejected that argument and concluded that the jury instructions accurately informed the jury of the factual predicates for a guilty verdict:

> "In our view, reading the instructions as a whole, rather than examining the intent instruction standing alone, the instructions accurately reflected the statutory requirements. In the context of the intentional murder charge, the jury would have understood the words 'particular conduct' in the phrase 'conscious objective to * * * engage in particular conduct' to mean conduct intended to cause the death of another. So understood, the 'engage in particular conduct' part of the instruction conveyed the same meaning as the 'cause a particular result' part of the instruction because both parts required the jury, to convict [the] defendant of intentional murder, to find that [the] defendant acted 'with a conscious objective' that his actions would result in the death of [the victim]. Here, the trial court first told the jury that 'the State must prove beyond a reasonable doubt * * * that [the defendant] intentionally caused the death of [the victim].' The court then stated that the phrase 'intentionally caused the death' of [the victim] means that 'the person acts with a conscious objective either to cause a particular result, or to engage in particular conduct.' Those instructions correctly told the jury that the prohibited conduct to which the intent element applied was 'caus[ing] the death of [the victim]'."

*Id.* at 119 (seventh brackets and omissions in original).

Here, the trial court instructed the jury as follows:

"A person acts 'intentionally' or 'with intent' when that person acts with a conscious objective either:

"(1)   To cause a particular result; or

"(2)   To engage in particular conduct."

Then it instructed the jury that the state had to prove that "[defendant] intentionally attempted to use unlawfully against [the victim] any dangerous weapon" and that "[defendant] intentionally attempted to place another person, [the victim], in fear of imminent serious physical injury by words and conduct." As in *Woodman*, here, any confusion on the part of the jury as to which elements constituted conduct and

which constituted results would not have affected its understanding of what the state was required to prove. Even if it erroneously believed that to "place another person * * * in fear of imminent serious physical injury" was conduct, rather than a result, it would have understood, from the definition of "intentionally," that defendant had to "act with a conscious objective * * * to" "place another person, [the victim], in fear of imminent serious physical injury."

The only possibility of jury confusion that defendant advances is that he might have been convicted on the menacing charge for causing the victim, subjectively, to be afraid, even if defendant did not intend to put him in fear. In order to arrive at that conclusion, however, the jury would have had to omit the word "intentional" from its reading of the definition of menacing, which we presume that it did not do. *Wallach v. Allstate Ins. Co.*, 344 Or 314, 326, 180 P3d 19 (2008) ("We presume that a jury follows a trial court's instructions."). Thus, the instructions accurately stated the law, and the jury would not have been confused.

Defendant's second argument is that, despite our conclusion regarding his first argument, *Crosby* requires "the mental state instructions * * * to specify the particular conduct required by the underlying criminal offense." In *Pedersen*, we rejected that argument.

In *Pedersen*, 242 Or App at 315, the defendant argued that "his proposed instruction, which provided definitions tailored to the material elements of each offense, was mandated by *Crosby*."[3] In particular, the defendant relied on a passage in *Crosby* that stated:

---

[3] In *Crosby*, the trial court's general instruction regarding the required mental state—recklessness—referred to two types of elements: "particular result" and "particular circumstance." 342 Or at 422. The charged crime required recklessness with regard to a result; recklessness with regard to a circumstance was not enough for a conviction. *Id.* at 431. The trial court's clarifying instruction, given in response to a question from the jury, indicated that recklessness with regard to any of multiple circumstances would permit conviction. *Id.* at 432. Based on that error, the Supreme Court reversed the conviction. *Id.* at 435. The reversal did not depend on any error in the original instruction. The court noted that, "[i]f the [general] instruction was defective at all, it was because it was ambiguous about what 'particular result' and 'particular circumstance' meant." *Id.* (emphasis added).

" 'The bare terms "particular result" and "particular circumstance" do not adequately convey to a jury the required link between reckless conduct and the results or circumstances specified in the underlying criminal statute. Furthermore, a trial court should not instruct the jury that the mental state relates to both a result and a circumstance, unless that is accurate in the context of the particular crimes that have been charged. As this opinion demonstrates, a defendant's objection in a similar context to the [original instruction] defining "recklessly" would be well taken.' "

*Pedersen*, 242 Or App at 319 (quoting *Crosby*, 342 Or at 435 n 12) (second insertion in *Pedersen*). Defendant in this case makes the same argument, relying on the same passage from *Crosby*.

After noting that the passage from *Crosby* that the defendant relied on was *dicta*, the *Pedersen* court explained that the passage from *Crosby*

"does not demonstrate that a tailored instruction is unequivocally required regardless of the circumstances of the case. Rather, those statements simply demonstrate that, in the context of that case, a general instruction would have been inappropriate because there were no 'circumstances' to which a mental state could have related. Here, as noted, it was correct to instruct the jury that the mental state related to a result or conduct * * *. The statements in *Crosby* cited by [the] defendant do not suggest that an instruction must go further and link the definition of intent to the material elements of each offense."

*Id.* at 319-20. The same is true here, where, as noted, the mental state applies to conduct and to result. *Crosby* did not mandate defendant's requested instruction.[4]

---

[4] We note, however, that, after *Crosby* was decided—and after the trial in this case—the Uniform Criminal Jury Instructions were modified to limit definitions of culpable mental states to the types of elements at issue in a case and to link the definitions of culpable mental states to the material elements of the offenses at issue. *See* 248 Or App at 692 n 1. That change was in accord with the portion of *Crosby* that defendant cites. However, here, where one of the charged crimes required proof of intent with regard to both conduct and result and where there was no risk of jury confusion, the lack of specific instructions did not amount to reversible error. *See Pedersen*, 242 Or App at 320 (" 'Defendant is not entitled to reversal merely because he believes that his proffered instruction stated the law more clearly than did the trial court's instructions, if the instructions given

We conclude that the instructions that the court gave accurately stated the law and that *Crosby* did not require a more specific instruction. Therefore, we affirm.

Affirmed.

correctly and completely addressed the issues.' " (Quoting *State v. Barnes,* 329 Or 327, 334, 986 P2d 1160 (1999).)).