Argued and submitted September 7, 2011, reversed and remanded
October 17, 2012

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

EUGENE LOREN DAVIS,
*Defendant-Appellant.*

Washington County Circuit Court
C082992CR; A143956

288 P3d 980

Per C. Olson and Hoevet, Boise & Olson, P.C. filed the brief for appellant.

Christina M. Hutchins, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Ortega, Presiding Judge, and Brewer, Judge, and Sercombe, Judge.*

_____

* Brewer, J., *vice* Rosenblum, S. J.

ORTEGA, P. J.

## ORTEGA, P. J.

Following a conviction for criminal mischief in the second degree, ORS 164.354,[1] defendant appeals and raises four assignments of error. The first two concern jury instructional error. Defendant contends that the trial court improperly instructed the jury as to the definition of "recklessly"—the mental state required to convict defendant of criminal mischief in the second degree. He also argues that the trial court abused its discretion in denying his motion for a new trial based on that instructional error. Defendant's third and fourth assignments concern aspects of the trial court's restitution award. Because we conclude that the trial court improperly instructed the jury as to the definition of "recklessly," as defendant contends in his first assignment of error, our resolution of that issue obviates the need to address any of defendant's other assignments of error. Accordingly, we reverse and remand.

The relevant facts are as follows. Defendant entered an undeveloped piece of property located downstream from his home in order to lower two culverts (transverse drains allowing water to run through) running under a gravel road located on the property. Defendant believed that the two culverts, ostensibly designed to carry flood waters from Ash Creek beneath the gravel road and into a nearby creek, Fanno Creek, were placed too high to be effective and instead, during high water, inhibited water flow and caused a build-up of siltation, rising of the streambed, and flooding.

At trial, defendant testified that he initially tried to address the problem by raising his concerns with the engineering manager for the city and with the alleged owner

---

[1] Although the statute has since been amended, *see* Or Laws 2009, ch 16, § 5, we cite the 2007 version of the statute, which was in effect at the time of the incident. ORS 164.354 provides:

"(1) A person commits the crime of criminal mischief in the second degree if:

"(a) The person violates ORS 164.345, and as a result thereof, damages property in an amount exceeding $100; or

"(b) Having no right to do so nor reasonable ground to believe that the person has such right, the person intentionally damages property of another, or, the person recklessly damages property of another in an amount exceeding $100."

of the property. When those efforts were unsuccessful, he decided to take matters into his own hands. He rented a backhoe and used it to dig channels from Ash Creek to one end of the two culverts and from the other end toward Fanno Creek. He then excavated the gravel road in order to dig a deeper channel in which to lower the culverts. In doing so, he uncovered, but did not damage, a city water main running parallel to the gravel road. At that point, defendant had already lowered one of the two culverts. After discovering the water main, defendant stopped trying to lower the second culvert.

Defendant subsequently was charged with first-degree criminal mischief, an intentional crime. In addition to the state's theory of the charged offense, the state also argued at trial that defendant acted recklessly, the mental state required for second-degree criminal mischief:

> "Now, recklessly, is aware of and consciously disregards the risk. Recklessly is a lesser included of intentional, so if you think he's acting intentionally, he's at least acting recklessly, too. And he sure was reckless, wasn't he? He didn't call before he dug. How many times have we all heard that? That was at the very least a reckless act. He didn't call, he dug up a water main, and he left it."

Thus, in addition to instructing the jury on the charged offense, the trial court, at the state's request, instructed the jury as to the lesser-included offense, second-degree criminal mischief, based on Uniform Criminal Jury Instruction (UCrJI) 2015:

> "* * * Oregon law provides that a person commits the crime of Criminal Mischief in the Second Degree if, having no right to do so or reasonable ground to believe that they have such a right, a person damages property of another and does so recklessly, and does so in an amount exceeding $100.

> "* * * [T]o establish the crime of Criminal Mischief in the Second Degree, the State would have to prove beyond a reasonable doubt the following things * * *: that the act occurred in Washington County; that it occurred on or between October 18th and 19th of 2008; that * * * defendant * * * recklessly damaged the property of another and damaged property of [the alleged victims]; and that * * *

defendant had no right or reasonable ground to believe that he had such a right; and that the property damage was in excess of $100; and that it was done recklessly."

The trial court, based on UCrJI 1036, then instructed the jury on "recklessly" as follows:

"A person acts recklessly if the person is aware of and consciously disregards a substantial and unjustifiable risk that a particular result would occur *or that a particular circumstance exists.* * * * The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of care that a reasonable person would exercise in the situation.

"When used in the phrase 'damage property,' recklessly means that a person is aware of and consciously disregards a substantial and unjustifiable risk that a result will occur or that damage will occur, and the risk must be of such—or excuse me—that the result in damage would occur *or that a circumstance exists,* and the risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of care that a reasonable person would observe."

(Emphasis added.)

Defendant took exception, asserting that the trial court's instruction defining "recklessly" was improper because it included the language italicized above. Specifically, defendant argued that the trial court should only have instructed the jury regarding whether defendant acted recklessly with regard to the material element of the crime at issue—damage to property—which is a result and not a circumstance. By allowing the jury to consider whether defendant acted recklessly with regard to either a result (damage) *or* a circumstance, defendant argued, the instruction impermissibly allowed the jury to find defendant guilty if it found that he was reckless with regard to a circumstance, *i.e.,* the existence of the water main, as opposed to finding that he recklessly damaged the property. In defendant's view, including the reference to whether a "circumstance exists" in the instruction was problematic, particularly in light of the state's theory at trial, which, according to defendant, was "that [defendant] should have

known that something was down [in the ground], and in a general sense, that was a circumstance that he should have known existed."

Defendant reiterates the same arguments on appeal and, as he did below, relies on the Supreme Court's decision in *State v. Crosby*, 342 Or 419, 154 P3d 97 (2007). There, the defendant was charged with two counts of murder by abuse after her mother died from infected bedsores. *Id.* at 421. The jury, however, convicted the defendant of two lesser-included counts of first-degree manslaughter of a dependent person. *Id.* at 424. The defendant appealed, assigning error to the trial court's clarifying jury instruction on the definition of "recklessly." At trial, the court had instructed the jury that "a person commits [first-degree manslaughter] 'if the person recklessly causes the death of a dependent person' under certain conditions." *Id.* at 422. The trial court, also instructed the jury that "recklessly" means that a "person is aware of and consciously disregards a substantial and unjustifiable risk either (1) [t]hat a particular result will occur; or (2) [t]hat a particular circumstance exists." *Id.* (citation omitted). In response to a question by the jury, and over the defendant's objection, the trial court told the jury that "[t]he phrase 'that a particular circumstance exists' does not necessarily mean only one thing in this case. Based upon your application of all of the court's instructions and definitions, you should decide what circumstances should be considered in your deliberations." *Id.* at 423 (emphasis omitted). After examining the statutory definition of "recklessly," and the statute defining first-degree manslaughter of a dependent person, the Supreme Court concluded:

> "What 'recklessly' means depends on how a substantive criminal statute uses that term. The object of the recklessness will be described in the statute, and it will be either a result or a circumstance. Here, the pertinent manslaughter statute referred to only a result, the death of the victim. The trial court should have instructed the jury that 'particular result' meant death, and that 'particular circumstance' did not apply to this case. Instead, the trial court instructed the jury that 'particular circumstance' could mean more than one thing, implied to the jury that 'exist[e]nce of skin breakdown' could be one of the circumstances, and otherwise authorized the jury to pick

any other circumstance that it thought appropriate. The instruction incorrectly conveyed the law to the jury and very likely influenced its verdict, given that the instruction responded to its question."

*Id.* at 435 (brackets in original).

The state responds that this case is distinguishable from *Crosby* because, unlike in that case, the jury here could not have misunderstood the material elements of the crime at issue as they applied to the facts. Moreover, the state contends that "the facts of this case are not as complicated as the facts in *Crosby* and the instructions at issue here were not given in response to a specific question from the jury."

In the state's view, this case is more closely analogous to *State v. Woodman*, 341 Or 105, 138 P3d 1 (2006). There, the defendant, who had been convicted of murder, argued, among other things, that the trial court's jury instruction on the definition of "intent" ("a conscious objective either to cause a particular result, or to engage in particular conduct") was erroneous. *Id.* at 117. Specifically, the defendant argued that the trial court, in

"refusing to omit the phrase 'or to engage in particular conduct' from the instruction, [left] the jury with the mistaken impression that it could find that [the] defendant had acted intentionally if he intended to 'cause a particular result' *or* if he 'engage[d] in particular conduct,' but did not intend a particular result from that conduct."

*Id.* (emphasis and third brackets in original). Thus, the defendant argued, the instructions permitted the jury to find him guilty of murder if it found that he had intentionally "'engage[d] in particular conduct'—sliding the knife to [his friend]—even if the jury believed that [the] defendant did not intend for [his friend] to use the knife to kill [the victim]." *Id.* (first brackets in original). The Supreme Court concluded that the intent instruction was accurate in the context of the jury instructions as a whole:

"In the context of the intentional murder charge, the jury would have understood the words 'particular conduct' in the phrase 'conscious objective to * * * engage in particular conduct' to mean conduct intended to cause the death of another. So understood, the 'engage in particular conduct'

part of the instruction conveyed the same meaning as the 'cause a particular result' part of the instruction because both parts required the jury, to convict [the] defendant of intentional murder, to find that [the] defendant acted 'with a conscious objective' that his actions would result in the death of [the victim]."

*Id.* at 119. The state contends that, like in *Woodman*, the instructions here, read as a whole, adequately apprised the jury of the applicable law.

For the reasons that follow, we agree with defendant that the trial court's jury instruction as to the meaning of "recklessly" as used in the second-degree criminal mischief statute was erroneous. In determining whether the trial court erred in giving a particular instruction, "we read the instructions as a whole to determine whether they state the law accurately." *Id.* at 118. An erroneous instruction amounts to reversible error if "the instruction probably created an erroneous impression of the law in the minds of the [jury] which affected the outcome of the case." *Waterway Terminals v. P.S. Lord*, 256 Or 361, 370, 474 P2d 309 (1970).

We first consider the statutory definition of "recklessly":

"'Recklessly,' when used with respect to a result or to a circumstance *described by a statute defining an offense,* means that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists * * *."

ORS 161.085(9) (emphasis added). Accordingly, then, we look to the substantive criminal statute at issue to determine whether the specific material element is a result or a circumstance. Again, as pertinent here, a person commits second-degree criminal mischief if "the person recklessly damages property of another in an amount exceeding $100." ORS 164.354 (2007). "Damages," as used in that statute, describes a *result* and not a circumstance: the statute inquires whether a person "recklessly damages," not whether a person is reckless with respect to whether damages exist. Thus, for a person to have committed second-degree criminal mischief, he must have been "aware of and consciously disregard[ed] a substantial and unjustifiable

risk" of causing a result: damage. Accordingly, here, "recklessly" does not refer to defendant being "aware of and consciously disregard[ing] a substantial and unjustifiable risk" that the city water main exists or, indeed, that *any* circumstance exists.[2]

We reject the state's argument that this case is analogous to *Woodman*. In concluding that the intent instruction there was accurate in the context of the jury instructions as a whole, the Supreme Court reasoned that,

> "the 'engage in particular conduct' part of the instruction *conveyed the same meaning* as the 'cause a particular result' part of the instruction because both parts required the jury, to convict defendant of intentional murder, to find that [the] defendant acted 'with a conscious objective' that his actions would result in the death of [the victim]."

341 Or at 119 (emphasis added). As the *Crosby* court noted, in *Woodman*, "it did not make a difference whether one categorized 'causing death' as a result or as conduct, so the court in *Woodman* did not decide that question." 342 Or at 434. Here, however, the jury instruction, in stating that "a result in damage would occur or that a circumstance exists," did not adequately convey to the jury that "result" and "circumstance," as used in that sentence, mean the same thing—or, in other words, it did not identify "damage" as the object of "recklessly": damage. Accordingly, *Woodman* is not helpful here.

We further reject the state's argument that the facts of this case are not complicated given defendant's admission on appeal that he entered onto the subject property with a backhoe and dislodged a culvert and uncovered a water main. According to the state, defendant has failed to "explain

---

[2] It is possible that "recklessly" does relate to one circumstance—the circumstance that damage was done to "property of another," as defined in ORS 164.354 (2007). However, we need not resolve that issue here. Neither party raised it, and, at trial, defendant did not contest that he did enter the property of another and excavated the property in order to lower the culverts. Rather, his contention was that he did not have the requisite specific intent to damage the property at issue. *See Crosby*, 342 Or at 431 n 10 (explaining a similar situation in which "recklessly" could relate to one circumstance that the court did not need to address because the parties did not raise the issue and the circumstance was not in dispute).

how his admitted conduct (and conduct proven at trial) is not, at the very least, second-degree criminal mischief."

The state's argument ignores the mental state element of second-degree criminal mischief. Defendant's conduct was not criminal if he engaged in it without being aware of, or consciously disregarding, a substantial and unjustifiable risk that his conduct would result in damage to the property. To be sure, a jury could reasonably infer from the evidence that defendant was aware that digging up the culvert presented a risk of damaging the property and that he consciously disregarded that risk. However, the jury instructions invited the jury to convict if it found that defendant, though not aware that he might damage the property, was aware of and disregarded the risk that the water main might run through the spot where he was digging.[3] Moreover, as noted previously, the state's theory, in part, was that defendant was reckless with regard to the existence of the water main—defendant "didn't call; he dug up a water main, and he left it."

While we recognize that *Crosby* "'does not demonstrate that a tailored instruction is unequivocally required regardless of the circumstances of the case,'" *State v. Durst*, 248 Or App 689, 698, 273 P3d 370 (2012) (quoting *State v. Pedersen*, 242 Or App 305, 319, 255 P3d 556 (2011)), here, like in *Crosby*, an instruction that recklessness as to whether a "circumstance exists" is sufficient to support a conviction is improper. Rather, the jury should have been instructed only regarding whether defendant acted recklessly as to the result: damage. Accordingly, the jury instructions as a whole did not accurately state the law and likely created a misimpression of the law that amounts to reversible error.

Reversed and remanded.

---

[3] That interpretation is further supported by the trial court's understanding of the case. In its colloquy with counsel regarding which instruction to provide to the jury, the trial court expressed the view that the jury could consider the existence of the water main as a "circumstance" as referenced in the jury instruction.